******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* SHILOH POLANCO
(AC 36502)

DiPentima, C. J., and Prescott and Bishop, Js.

*Argued November 30, 2015—officially released May 17, 2016*

(Appeal from Superior Court, judicial district of
Danbury, Roraback, J.)

*Peter G. Billings*, with whom, on the brief, was *Sean P. Barrett*, for the appellant (defendant).

*Emily L. Graner Sexton*, special deputy assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Warren C. Murray*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Shiloh Polanco, appeals from the judgment of the trial court revoking his probation and imposing a thirty month prison sentence. On appeal, the defendant claims that he was denied his right to due process under the fourteenth amendment to the United States constitution[1] by the court's admission into evidence of a laboratory report when the author of that report was not present and available for cross-examination. We conclude that this claim was not preserved and that the record is inadequate to review it under *State* v. *Golding*, 213 Conn. 233, 239–40, 813 A.2d 567 (1989). Accordingly, we affirm the judgment of the trial court.

The following facts are necessary for our resolution of this appeal. On August 16, 2006, the defendant pleaded guilty to violating General Statutes § 21a-277 (a), and was sentenced to ten years incarceration, execution suspended after three years, and five years of probation. One of the terms of his probation was that he not violate the criminal laws of the United States or any state. The defendant admitted to violating his probation on August 3, 2012, and, as a result, his term of probation was continued and he paid a $5000 fine.

The defendant was arrested in New York state on November 6, 2012, and charged with criminal possession of marijuana in the second degree and various motor vehicle violations. On February 6, 2013, an arrest warrant was issued in Connecticut for a violation of probation.[2] The defendant denied this charge and a hearing was held over a six month period.

During the hearing, the court heard the following testimony. On November 6, 2012, Steven Stromberg,[3] a police officer employed by the Westchester County Department of Public Safety in the state of New York, effectuated a traffic stop after noticing a large crack in the windshield of a vehicle driven by the defendant. Stromberg questioned the defendant and eventually requested that he exit the vehicle. The defendant complied, and the two discussed some irregularities with the defendant's paperwork. Stromberg asked if he could perform a patdown search, and the defendant objected. At that point, the defendant placed his hand in his pocket. Stromberg, fearing for his safety, drew his service weapon, ordered the defendant to the ground, and placed him in handcuffs.

Stromberg subsequently determined that the vehicle's registration had been suspended for unpaid parking tickets. He elected to impound the vehicle for the suspended registration and for having improper license plates. Stromberg performed an inventory search of the vehicle and found seven heat sealed bags of what he suspected was marijuana in the trunk.

The heat sealed bags were transported to a laboratory

for testing. Stromberg received a report, which the state sought to have admitted as an exhibit at the hearing.[4] The defendant, noting that this report was actually an affidavit from an employee of the laboratory named Stephanie Brumley,[5] objected on the basis of the United States Supreme Court's decision in *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009),[6] and General Statutes § 53a-32. Specifically, the defendant argued that for the report to be admitted into evidence, its author, Brumley, had to be present in court and subject to cross-examination. He later clarified that his argument was not based on the rule against hearsay,[7] but the sixth amendment right to confrontation[8] and his statutory right to cross-examine witnesses as provided in § 53a-32 (c).[9]

The court overruled the defendant's objection. Specifically, it stated: "I'm going to overrule the objection because I need to reconcile the broadly acknowledged ability for reliable hearsay evidence to be considered in the context of a violation of probation hearing and I need to weigh that against the explicit language of the statute, which says that a defendant in such a hearing shall have the right to cross-examine witnesses. To the extent that that language was read literally such that it would operate to prohibit any hearsay evidence, that would seem to be completely at odds with the body of case law, which has over a long period of time established the proposition that reliable hearsay evidence is admissible. I think the—the way—the most reasonable way to read the words of those statutes is to give [the defendant] the opportunity to cross-examine those witnesses who are here present testifying on behalf of the state, and you're taking advantage of that as we speak . . . ."

The defendant iterated that his objection was not based on a claim of hearsay but on the sixth amendment's confrontation clause. The court explained that it had overruled the objection because the admission of the laboratory report, which was reliable hearsay evidence in the court's opinion, did not violate the defendant's right under the confrontation clause in the context of a violation of probation hearing.

After hearing evidence and argument, the court found that the state had proven, by a preponderance of the evidence, that the defendant violated his probation "in that he was in possession of a substantial amount of marijuana, in violation of the laws of the state of New York, where the conduct took place and that conduct was a violation of New York law." It also determined that continued probation would not be a useful exercise. The court revoked the defendant's probation and sentenced him to thirty months incarceration.[10] This appeal followed.

As we previously explained, the defendant argued to the trial court that both his sixth amendment right to

confront Brumley and his statutory right to cross-examine her were violated. On appeal, however, the defendant has reformulated his claim, arguing solely that his fourteenth amendment right to due process was violated by the admission into evidence of the laboratory report when Brumley was not in court and subject to cross-examination.[11] Specifically, he argues that the court should have balanced his interest in confronting Brumley against the reasons, if any, asserted by the state for not presenting her as a witness. We conclude that the record is inadequate to review the defendant's sole and unpreserved appellate claim.

Before addressing the specifics of this appeal, we set forth certain principles related to probation revocation proceedings. Our Supreme Court has explained that probation is a penal alternative to incarceration, and its purpose is to provide a period of grace in order to aid in the rehabilitation of the individual. *State* v. *Faraday*, 268 Conn. 174, 180, 842 A.2d 567 (2004). It also noted that persons on probation do not enjoy absolute liberty but rather "conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to assure that the probation serves a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." (Internal quotation marks omitted.) Id. This conditional liberty, however, is a privilege that once granted, constitutes a constitutionally protected interest. *State* v. *Barnes*, 116 Conn. App. 76, 79, 974 A.2d 815, cert. denied, 293 Conn. 925, 980 A.2d 913 (2009). The due process clause of the fourteenth amendment mandates certain minimum procedural safeguards before that conditional liberty interest may be revoked.[12] Id.

In *State* v. *Shakir*, 130 Conn. App. 458, 467, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011), we noted that the due process safeguards are codified in Federal Rule of Criminal Procedure 32.1 and include "an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear . . . ." We further explained that the court must balance the defendant's interest in cross-examination against the state's good cause for denying the right to cross-examine. Id. Specifically, we cited to case law from the United States Court of Appeals for the Second Circuit and stated: "In considering whether the court had good cause for not allowing confrontation or that the interest of justice [did] not require the witness to appeal . . . the court should balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay." (Citation omitted; internal quotation marks omitted.) Id., 468, citing *United States* v. *Williams*, 443 F.3d 35, 45 (2d Cir. 2006); see also *State* v. *Giovanni P.*, 155

Conn. App. 322, 335, 110 A.3d 442, cert. denied, 316 Conn. 909, 111 A.3d 883 (2015). Mindful of these principles, we turn to the specifics of the defendant's appeal.

The defendant never argued to the trial court that it was required to conduct the balancing test to determine whether his right to due process had been violated. The claim now before us, therefore, was not preserved for appellate review.[13] See, e.g., *State* v. *Johnson*, 143 Conn. App. 617, 624, 70 A.3d 168, cert. denied, 310 Conn. 950, 82 A.3d 625 (2013).

The defendant also claims, however, that this claim is reviewable pursuant to *State* v. *Golding*, supra, 233 Conn. 239–40. As we recently have noted, "[u]nder *Golding* review, as modified in *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *D'Amato*, 163 Conn. App. 536, 543 n.9,    A.3d    (2016); see also *State* v. *Yeaw*, 162 Conn. App. 382, 389,    A.3d    (2016); *State* v. *Terry*, 161 Conn. App. 797, 812, 128 A.3d 958 (2015).

"[U]nless the defendant has satisfied the first *Golding* prong, that is, unless the defendant has demonstrated that the record is adequate for appellate review, the appellate tribunal will not consider the merits of the defendant's claim." (Internal quotation marks omitted.) *State* v. *Dyous*, 153 Conn. App. 266, 277, 100 A.3d 1004 (2014), appeal dismissed, 320 Conn. 176, 128 A.3d 505 (2016) (certification improvidently granted); see also *State* v. *Santana*, 313 Conn. 461, 469–70, 97 A.3d 963 (2014) (appellate tribunal free to respond to defendant's claim by focusing on whichever prong is most relevant). We conclude that the defendant in this case failed to satisfy the first *Golding* prong, and, as a result, we do not review the merits of his due process claim.

Our analysis is guided by *State* v. *Brunetti*, 279 Conn. 39, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007), where our Supreme Court extensively discussed the first prong of *Golding*. At the outset, it noted that "*Golding* is a narrow exception to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage

trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . Nevertheless, because constitutional claims implicate fundamental rights, it also would be unfair automatically and categorically to bar a defendant from raising a meritorious constitutional claim that warrants a new trial solely because the defendant failed to identify the violation at trial. *Golding* strikes an appropriate balance between these competing interests: the defendant may raise such a constitutional claim on appeal, and the appellate tribunal will review it, but only if the trial court record is adequate for appellate review. The reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred. Thus, as we stated in *Golding*, we will not address an unpreserved constitutional claim [i]f the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred." (Citation omitted; footnotes omitted; internal quotation marks omitted.) Id., 55–56.

The legal issue in *Brunetti* was whether the consent of the defendant's father to allow a police search of a house that the defendant lived in with his parents was valid when the defendant's mother had declined to sign a consent to search form for the residence. Id., 56. Our Supreme Court rejected the contention that the mother's refusal to sign the form amounted to withholding of consent to the search. "Because the refusal to sign a consent to search form is one of several factors to be considered in determining the validity of consent, such refusal does not vitiate consent otherwise found to be valid in light of all of the circumstances. . . . Whether a [person] voluntarily has consented to a search is a question of fact to be determined by the trial court from the totality of the circumstances based on the evidence that it deems credible along with the reasonable inferences that can be drawn therefrom. . . . Thus, no one factor is controlling on the issue of voluntariness . . . including the fact that the person whose consent to search was sought refused to sign a consent form." (Citations omitted; internal quotation marks omitted.) Id., 56–57. The court then concluded that the record was inadequate to determine a valid consent because it did not reveal "whether the defendant's mother (1) declined to sign the form but orally consented to the search, (2) acquiesced in her husband's consent to the search, (3) affirmatively refused to consent to the search, or (4) took some other position regarding the search. All we know is that she did not sign the consent to search form." Id., 58. It further observed that as a result of the proceedings, the state had not been placed on notice that it was required to show that the mother had consented to the search. Id., 59. "In such circumstances, the state bears no responsibility for the evidentiary lacunae, and, therefore, it

would be manifestly unfair to the state for this court to reach the merits of the defendant's claim upon a mere *assumption* that the defendant's mother had declined to consent to the search." (Emphasis in original.) Id. Moreover, "[b]ecause the state had no reason to adduce any evidence regarding the mother's role in the consent to search, there was no meaningful factual inquiry into that issue, and, consequently, we have no idea what such an inquiry would have revealed and no idea what the trial court would have found about the mother's consent or lack thereof." Id., 61.

In the present case, the state had no notice of the defendant's due process claim, and, accordingly, did not present evidence regarding its reasons for not producing Brumley at the hearing. In this circumstance, the state was not responsible for this evidentiary lacunae. It would be patently unfair to address the defendant's due process claim on the basis of this record.

We are further guided by our decision in *State* v. *Shakir*, supra, 130 Conn. App. 458. In that case, the defendant argued that his fourteenth amendment right to due process was violated at his probation revocation hearing when a video was admitted into evidence without his being able to confront and cross-examine an adverse witness. Id., 465. After setting forth the relevant law on probation revocation hearings, his due process rights, and the balancing test, we concluded that the record was inadequate to review his unpreserved claim. Id., 466–68. Specifically, we stated: "In the present case, the factual underpinnings for the minor complainant's not being produced to testify that might amount to good cause were not developed via evidence on the record demonstrating whether producing her would cause great difficulty, expense or risk of harm. Consequently, we conclude that the record is inadequate for our review under *Golding*." Id., 468.

Guided by this precedent, we conclude that the defendant in the present case failed to sustain his burden of providing this court with an adequate record to review his claim of a due process violation. Specifically, the record is silent as to the state's reasons for not producing Brumley as a witness at the probation revocation hearing and as to whether those reasons amount to good cause. Accordingly, we decline to review the defendant's unpreserved claim on the basis of an inadequate record.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The fourteenth amendment to the United States constitution provides in relevant part: "All persons born or naturalized in the United States, and subject to the jurisdiction therefore, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty or property, without due process of law*; nor deny to any person within its jurisdiction the equal protection of the law . . . ." (Emphasis added.)

[2] General Statutes § 53a-32 (a) provides in relevant part: "At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. . . ."

[3] The court found Stromberg credible. During his testimony, Stromberg, a law enforcement officer for over eleven years, opined that, on the basis of his training and experience, the substance in the trunk of the defendant's vehicle appeared to be marijuana. He also noted that a canine trained in narcotic detection made a positive indication of the presence of contraband. Further, Stromberg stated that the defendant appeared to become more nervous during the course of their interaction.

[4] The report indicated that there was a total of approximately two pounds of marijuana in the seven bags.

[5] In this report, Brumley swore that she was a forensic scientist employed by the Westchester County Department of Laboratories and Research, Division of Forensic Sciences, and that she performed an analysis on the items received from the Westchester County Police Department. She indicated that the presence of marijuana was confirmed by microscopic examination, color test, and thin layer chromatography. She noted that "[t]his report does not constitute the entire case file. Copies of notes, worksheets and other supporting materials related to this case are available upon request."

[6] In *Melendez-Diaz* v. *Massachusetts*, supra, 557 U.S. 309–311, the United States Supreme Court held that a certificate of analysis, sworn before a notary public, that showed the results of a forensic analysis of a substance determined to be cocaine was a testimonial statement and the defendant had a sixth amendment right to confront the analyst unless there was a showing that the analyst was unavailable to testify and the defendant had a prior opportunity to cross-examine him. See also *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The holding of *Melendez-Diaz* was extended in *Bullcoming* v. *New Mexico*,      U.S.      , 131 S. Ct. 2705, 2717, 180 L. Ed. 2d 610 (2011), which held that the absence of an oath was not determinative of whether an analyst's report constituted a testimonial statement for purposes of the sixth amendment and *Crawford*.

[7] See *State* v. *Osbourne*, 162 Conn. App. 364, 379, 131 A.3d 277 (2016); Conn. Code Evid. § 8-2.

[8] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

[9] General Statutes § 53a-32 (c) provides in relevant part: "[T]he court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge, shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of a public defender, *and shall have the right to cross-examine witnesses* and to present evidence in such defendant's own behalf. . . ." (Emphasis added.)

[10] "[U]nder § 53a-32, a probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion." (Internal quotation marks omitted.) *State* v. *Sherrod*, 157 Conn. App. 376, 381–82, 115 A.3d 1167, 1171, cert. denied, 318 Conn. 904, 122 A.3d 633 (2015); see also *State* v. *Santos T.*, 146 Conn. App. 532, 534–35, 77 A.3d 931, cert. denied, 310 Conn. 965, 83 A.3d 345 (2013).

[11] The defendant has not pursued his statutory claim as such on appeal.

[12] In *State* v. *Baxter*, 19 Conn. App. 304, 311–12, 563 A.2d 721 (1989), we recited the minimum due process requirements for revocation of probation as identified by the United States Supreme Court: "*Morrissey* v. *Brewer*, [408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)], held that the minimum due process requirements for revocation of parole include written notice of the claimed parole violation, disclosure to the parolee of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses in most instances, a neutral hearing body, and a written statement as to the evidence for and reasons for parole revocation. The court also held that there should be a preliminary hearing by a detached body to determine if probable cause exists to detain the parolee pending a final decision on revocation. *Gagnon* v. *Scarpelli*, [411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1972)], extended the holding in *Morrissey* to probationers because there is no difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation . . . ." (Internal quotation marks omitted). See also *State* v. *Shakir*, 130 Conn. App. 458, 467, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011).

[13] During the proceedings at trial, the defendant objected to the admission of the report on the ground that his sixth amendment right to confrontation was violated. In support of his argument that the confrontation clause was applicable in a violation of probation hearing, the defendant referenced § 53a-32 (c), which grants a defendant the right to cross-examine witnesses at a violation of probation hearing. At the time that the court issued its oral ruling on the admissibility of the report, the defendant further clarified that his "objection was based on the confrontation clause." Thus, to the extent that the defendant mentioned § 53a-32 (c) in his objection, it was not referenced as an independent basis for excluding the report, nor was it associated with the defendant's fourteenth amendment due process right to cross-examine witnesses.

On appeal, the defendant now argues that because § 53a-32 (c) codifies his fourteenth amendment due process right to cross-examine witnesses and because he mentioned the statute in his objection, he properly raised a due process claim before the trial court, and, thus, the claim is preserved. We note that the defendant has not offered any authority for his contention that § 53a-32 (c) codifies his fourteenth amendment due process right to cross-examine witnesses at a violation of probation hearing. We further note that there may be a case in which a due process claim is raised properly by the defendant's objection to the admission of hearsay evidence at a violation of probation hearing on the ground that § 53a-32 (c) guarantees him the right to cross-examine adverse witnesses. See *State* v. *Kevalis*, 313 Conn. 590, 602, 99 A.3d 196 (2014) (suggestion that § 53a-32 [c] codifies due process clause). The present case, however, given the context in which the statute was mentioned, is not such a case. We decline to hold that a party properly raised a due process claim by merely mentioning § 53a-32 (c).