******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* ANTHONY CRESPO
## (AC 41111)

DiPentima, C. J., and Elgo and Bright, Js.

*Syllabus*

The defendant, who had been on probation as a result of his conviction of charges of sexual assault and risk in injury to a child related to his sexual abuse of a minor child, appealed to this court from the judgment of the trial court finding him in violation of his probation. The defendant's probation had included special conditions imposed by the sentencing court that required, inter alia, that he have no unsupervised contact with minors under the age of sixteen, and that any supervisor be approved by his treatment provider and supervising probation officer. In preparation for his release from incarceration, the defendant signed a certain standardized form that was prepared by the Office of Adult Probation, pursuant to statute (§ 53a-30 [b]), that prohibited him from being in the presence of or having contact with children under the age of sixteen without probation officer approval. The defendant's probation officer, S, thereafter obtained an arrest warrant after he received an anonymous report that a fourteen year old was living at the apartment that the defendant shared with his wife. At the probation violation hearing, S described a meeting with the anonymous person, and the trial court overruled the defendant's objection to that testimony, which the defendant claimed was hearsay and violated his right to confrontation. The defendant thereafter moved to dismiss the violation of probation charge on the ground that the approval condition on the standardized form was inconsistent with the sentencing court's supervisor requirement. The trial court denied the motion to dismiss and then denied the defendant's motion for judicial disqualification, which was based on his claim that certain of the court's evidentiary rulings and its colloquy with defense counsel about the filing of the motion to dismiss would lead a reasonable defendant to believe that the court would be biased toward the defendant. *Held*:

1. The defendant's claim that the trial court violated his right to confrontation when it overruled his objection to S's testimony on confrontation grounds without making a finding of good cause was not reviewable, as the record was inadequate for review and the defendant failed to distinctly raise that claim at trial; although defense counsel referenced the confrontation clause in his objection, the defendant's claim on appeal was predicated on his fourteenth amendment right to due process, the record reflected that he failed to distinctly raise at trial the inquiry that the trial court was required to conduct, which entailed balancing his interest in confronting the declarant with the state's interest in not producing the declarant and the reliability of the proffered hearsay, and the defendant provided this court with no authority indicating that the sixth amendment right to confrontation applied to probation revocation proceedings.

2. The defendant could not prevail on his claim that the trial court improperly denied his motion to dismiss: the approval condition and the supervisor condition of his probation complemented each other and were not inherently inconsistent or contradictory, as the supervisor condition ensured that a supervisor was present for any contact between the defendant and a minor under the age of sixteen, and the approval condition ensured that such contact was approved by his probation officer in the first instance; moreover, because the defendant's incarceration stemmed from the sexual and physical assault of a six year old child, it was entirely appropriate for the Office of Adult Probation to impose the approval condition as a prerequisite to any supervised contact between the defendant and minors under the age of sixteen.

3. The defendant's unpreserved claim that the trial court improperly failed to hold an evidentiary hearing on the veracity of certain allegations in S's arrest warrant affidavit was not reviewable; the defendant never requested a hearing during the probation revocation proceeding and did not distinctly raise that claim with the trial court, and, thus, the record

lacked the requisite findings as to whether any allegedly false statements were knowingly and intentionally made with reckless disregard for the truth, and whether those statements were necessary to the finding of probable cause.

4. The trial court did not abuse its discretion in denying the defendant's motion for judicial disqualification: adverse rulings do not amount to evidence of bias sufficient to support a claim of judicial disqualification, and the defendant's claim that the court offered no explanation for denying his right to confront the witness against him was unfounded, as the defendant failed to bring that concern distinctly to the court's attention and never requested an explanation or articulation from the court on that ruling, as provided for in our rules of practice; moreover, nothing in the transcript of the hearing reflected bias on the part of the court, as defense counsel clarified in his colloquy with the court that his concern regarding the filing of the motion to dismiss had nothing to do with the court and offered an apology, which the court accepted.

5. The trial court's finding that the defendant violated his probation was not clearly erroneous, as that court reasonably could have found that the defendant did not comply with the approval condition: the record indicated that, prior to the defendant's release from incarceration, he reviewed and signed the terms and conditions of his probation, including the approval condition, and thereby manifested his understanding of the necessity to abide by those conditions, and S testified that the approval condition obligated the defendant to obtain his approval prior to having any contact with a minor child, and that the defendant had admitted to him that the fourteen year old was staying at his residence and that he was having contact with her; moreover, S testified that the defendant had not obtained his approval for any such contact, and that when S and another probation officer visited the defendant's apartment, they encountered a sixteen year old, who had informed them that the fourteen year old was staying there and had done so at several intervals throughout the year, and the court was free to credit S's testimony.

Argued January 28—officially released June 18, 2019

*Procedural History*

Information charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Middlesex and tried to the court, *Suarez, J.*; thereafter, the court denied the defendant's motion to dismiss; subsequently, the court, *Diana, J.*, denied the defendant's motion to disqualify the judicial authority; thereafter, the court, *Suarez, J.*, rendered judgment revoking the defendant's probation, from which the defendant appealed to this court. *Affirmed.*

*Michael S. Hillis*, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Peter A. McShane*, former state's attorney, and *Russell Zentner*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ELGO, J. The defendant, Anthony Crespo, appeals from the judgment of the trial court finding him in violation of probation pursuant to General Statutes § 53a-32. On appeal, the defendant claims that (1) the court improperly overruled an objection predicated on the right to confront adverse witnesses without making the requisite finding of good cause, (2) the court improperly denied his motion to dismiss due to the imposition of allegedly inconsistent conditions of probation, (3) the court improperly failed to conduct an evidentiary hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), (4) the court abused its discretion in denying his motion for judicial disqualification and (5) the evidence was insufficient to sustain the court's finding that the defendant violated a condition of his probation. We affirm the judgment of the trial court.

On April 23, 2007, the defendant pleaded guilty to assault in the second degree in violation of General Statutes § 53a-60 (a) (2), risk of injury to a child involving sexual contact in violation of General Statutes § 53-21 (a) (2), and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A).[1] At sentencing, the court remarked: "This is some of the worst treatment of a minor child that I have ever seen in my years on the bench. In my opinion, Mr. Crespo, you are a sexual deviant, and you are a violent and physical human being, except that you are a violent and physical human being toward those who cannot defend themselves." The court then sentenced the defendant to a total effective term of sixteen years incarceration, execution suspended after nine and one-half years, followed by fifteen years of probation. The special conditions of probation imposed by the court required, inter alia, that the defendant have "no unsupervised contact with minors under the age of sixteen and that any supervisor be approved by both his treatment provider and his supervising [probation] officer" (supervisor condition).

On December 8, 2014, in preparation for his release from incarceration, the defendant signed several standardized forms prepared by the office of adult probation, including one titled "Sex Offender Conditions of Probation." Among the conditions specified therein and marked applicable to the defendant was the following requirement: "You will not be in the presence of minors, nor have contact in any form, direct or indirect . . . with children under the age of sixteen without Probation Officer approval. Any contact must be reported immediately to a Probation Officer" (approval condition).

On March 17, 2015, the defendant's probationary period commenced upon his release from the custody

of the Commissioner of Correction. In accordance with the supervisor condition imposed by the court at sentencing, the defendant's wife, Rosa,[2] subsequently was approved as the defendant's supervisor by his probation officer, the treatment provider, and the victim's advocate.

Approximately nine months into the defendant's probationary period, his probation officer, Michael Sullivan, received a report that a fourteen year old female was living at the apartment that the defendant shared with Rosa. Following an investigation, Sullivan obtained an arrest warrant for the defendant's violation of the terms of his probation. In that application, Sullivan alleged that the defendant had violated both the supervisor condition and the approval condition of his probation. The defendant then was arrested and charged with breaching the terms of his probation in violation of § 53a-32.

A probation revocation hearing commenced on November 8, 2017, at which the court heard testimony from Sullivan and Vanessa Valentin, a probation officer who was involved in the investigation of the defendant's alleged violation of the terms of his probation. When the state rested in the adjudicatory stage of that proceeding, the defendant moved to dismiss the charge on the ground that the approval condition of his probation was inconsistent with the supervisor condition ordered by the trial court. After hearing argument from the parties, the court denied that motion. Defense counsel then asked the trial court to disqualify itself on the ground of bias. In response, the court stated: "Because of the seriousness of the matter before the court, because of the fact that your client is facing incarceration and because of the fact that you've raised the issue now, at this late stage of the proceeding, I am going to ask that another judge hear your motion to disqualify . . . ." Following a recess, Judge Leo V. Diana presided over a hearing on the defendant's motion for judicial disqualification, at the conclusion of which the court denied the motion.

The adjudicatory phase of the probation revocation hearing resumed on November 17, 2017. The defendant presented the testimony of one witness, the fourteen year old female who allegedly resided at the defendant's apartment for a period of time in December, 2016.[3] When her testimony concluded, the defendant rested, and the court heard argument from the parties. The prosecutor argued that the evidence demonstrated that the defendant had violated the approval condition of his probation. The court agreed and found, by a fair preponderance of the evidence, that the defendant had violated the terms of his probation. During the dispositional phase of the proceeding, the court revoked the defendant's probation and sentenced him to a term of six and one-half years of incarceration, execution

suspended after five years, followed by ten years of probation.[4] This appeal followed.

I

The defendant first contends that the court improperly overruled his objection to certain testimony on confrontation grounds without making a specific finding of good cause. The state counters that this claim is unpreserved. We agree with the state.

The following additional facts are relevant to the defendant's claim. During his testimony at the probation revocation hearing, Sullivan stated that he had received an anonymous report regarding the defendant's alleged violation of the terms of his probation. When Sullivan then proceeded to describe a meeting with that anonymous person, defense counsel objected on hearsay grounds. The court summarily overruled that objection. Sullivan then was asked about the substance of his conversation with that anonymous person, to which defense counsel again objected, stating: "Your Honor, I move to strike all of that inquiry for two reasons. One, it isn't just that there were relaxed rules of evidence for these procedures, but the confrontation clause is my client's constitutional right. I have no way of doing any of this with this officer because he's not the person that witnessed or saw any of this. So, it's not just an evidentiary violation, it's a violation of my client's constitutional rights to confront. And therefore, again, also, it contained total hearsay, which is hearsay within hearsay within this. And I believe that they should produce the witness so that witness can be properly cross-examined. Failing to do that, this testimony, should be stricken." In response, the court stated, "Overruled." The prosecutor then resumed his questioning of Sullivan, and defense counsel thereafter made no further mention of the confrontation issue.

As a preliminary matter, we note that the defendant has provided this court with no authority indicating that the right to confrontation contained in the sixth amendment to the United States constitution applies to probation revocation proceedings. See, e.g., *State* v. *Esquilin*, 179 Conn. App. 461, 472 n.10, 179 A.3d 238 (2018), and cases cited therein (noting that "an overwhelming majority of federal circuit and state appellate courts that have addressed this issue have concluded that [the confrontation standard articulated in *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)] does not apply to a revocation of probation hearing"). Although defense counsel referenced the "confrontation clause" in his objection before the trial court, his claim on appeal is predicated on the due process rights contained in the fourteenth amendment to the United States constitution, which mandate "certain minimum procedural safeguards before that conditional liberty interest [of probation] may be revoked"; *State* v. *Polanco*, 165 Conn. App. 563, 570,

140 A.3d 230, cert. denied, 322 Conn. 906, 139 A.3d 708 (2016); including the right to question adverse witnesses.[5] Id., 571.

The exercise of the right to confront adverse witnesses in a probation revocation proceeding is not absolute, but rather entails a balancing inquiry conducted by the court, in which the court "must balance the defendant's interest in cross-examination against the state's good cause for denying the right to cross-examine. . . . In considering whether the court had good cause for not allowing confrontation or that the interest of justice [did] not require the witness to appear . . . the court should balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay." (Citation omitted; internal quotation marks omitted.) Id. To properly preserve for appellate review a confrontation claim in this context, our precedent instructs that a defendant must distinctly raise the balancing issue with the court at the probation revocation proceeding. If the defendant fails to do so, the claim is deemed unpreserved. See *State* v. *Tucker*, 179 Conn. App. 270, 278–79 n.4, 178 A.3d 1103 ("a defendant's due process claim is unpreserved where the defendant never argued to the trial court that it was required to balance his interest in cross-examining the victim against the state's good cause for not calling the victim as a witness"), cert. denied, 328 Conn. 917, 180 A.3d 963 (2018); *State* v. *Esquilin*, supra, 179 Conn. App. 474 (same); *State* v. *Polanco*, supra, 165 Conn. App. 571 (same).

The record plainly reflects that the defendant failed to distinctly raise that claim in the present case. For that reason, resort to the familiar rubric of *Golding* review is unavailing,[6] as the record in such circumstances is inadequate to review the alleged due process violation. See *State* v. *Esquilin*, supra, 179 Conn. App. 477–78. Accordingly, we decline to review the merits of the defendant's unpreserved claim.

II

The defendant next claims that the court improperly denied his motion to dismiss on the ground that the approval condition included on the sex offender conditions of probation form that he signed in preparation for his release from incarceration was inconsistent with the supervisor condition imposed by the court at his sentencing. We disagree.

The proper interpretation of conditions of probation presents a question of law. *State* v. *Faraday*, 268 Conn. 174, 191, 842 A.2d 567 (2004). Our review, therefore, is plenary.

Our analysis begins with General Statutes § 53a-30 (b), which "expressly allows the office of adult proba-

tion to impose reasonable conditions on probation." *State* v. *Thorp*, 57 Conn. App. 112, 116, 747 A.2d 537, cert. denied, 253 Conn. 913, 754 A.2d 162 (2000). Such "[p]ostjudgment conditions imposed by adult probation are not a modification or enlargement of some condition already imposed by the court, but are part of an administrative function that [§ 53a-30 (b)] expressly authorizes as long as it is not inconsistent with any previously court-imposed condition." *State* v. *Johnson*, 75 Conn. App. 643, 652, 817 A.2d 708 (2003).

More specifically, § 53a-30 (b) provides: "When a defendant has been sentenced to a period of probation, the Court Support Services Division may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) of this section which are not inconsistent with any condition actually imposed by the court." Section 53a-30 (b) thus contains two requirements. First, the condition of probation contemplated by the Office of Adult Probation must be one that the trial court could have imposed under § 53a-30 (a). Second, the condition must not be inconsistent with any condition of probation previously imposed by the court.

The state submits, and the defendant concedes, that the approval condition was one which the sentencing court could have imposed. Pursuant to § 53a-30 (a), the sentencing court was authorized to impose any condition "reasonably related to the defendant's rehabilitation." Given the context of the defendant's guilty plea; see footnote 1 of this opinion; we agree that the court could have imposed the approval condition at the time of sentencing.

With respect to the second requirement of § 53a-30 (b), the defendant claims that the approval condition is inconsistent with the supervisor condition that the court imposed at sentencing. This court previously has equated the term "inconsistent," as it is used in § 53a-30 (b), with incompatibility. *State* v. *Johnson*, supra, 75 Conn. App. 653. This court has further explained that, to run afoul of the mandate of § 53a-30 (b), the condition imposed by the Office of Adult Probation must be "in direct contradiction to [a] condition imposed by the sentencing court . . . ." *State* v. *Armstrong*, 86 Conn. App. 657, 664, 862 A.2d 348 (2004), cert. denied, 273 Conn. 909, 870 A.2d 1081 (2005).

We disagree with the defendant that the approval condition imposed by the Office of Adult Probation prior to his release from incarceration is incompatible with, and in direct contradiction to, the supervisor condition ordered by the court at sentencing. Rather, those two conditions complement each other. Whereas the supervisor condition ensured that a supervisor was present for any contact between the defendant and a minor under the age of sixteen, the approval condition ensured that such contact was approved by his probation officer

in the first instance. We perceive nothing inherently inconsistent or contradictory about those two conditions of probation.

The core functions of probation officers are "to guide the [probationer] into constructive development" and to prevent "behavior that is deemed dangerous to the restoration of the individual into normal society." *Morrissey* v. *Brewer*, 408 U.S. 471, 478, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Under Connecticut law, probation officers are obligated to "keep informed of [the probationer's] conduct and condition and use all suitable methods to aid and encourage him and to bring about improvement in his conduct and condition." General Statutes § 54-108 (a). Because the defendant's incarceration in the present case stemmed from the sexual and physical assault of a six year old child, it was entirely appropriate for the Office of Adult Probation, in effectuating that statutory obligation, to impose the approval condition as a prerequisite to any supervised contact between the defendant and minors under the age of sixteen. We therefore reject the defendant's claim that the approval and supervisor conditions of his probation are incompatible or inconsistent.

### III

The defendant claims the court improperly failed to hold an evidentiary hearing pursuant to *Franks* v. *Delaware*, supra, 438 U.S. 154, on the veracity of certain allegations contained in the arrest warrant affidavit prepared by Sullivan. In *Franks*, the United States Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the [f]ourth [a]mendment requires that a hearing be held at the defendant's request." Id., 155–56. As our Supreme Court has explained, before a defendant is entitled to a *Franks* hearing, the defendant must "(1) make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit; and (2) show that the allegedly false statement is necessary to a finding of probable cause." (Internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 363, 796 A.2d 1118 (2002).

In *State* v. *Bangulescu*, 80 Conn. App. 26, 832 A.2d 1187, cert. denied, 267 Conn. 907, 840 A.2d 1171 (2003), this court held that a defendant must distinctly raise a request for a *Franks* hearing before the trial court in order to preserve the claim for appellate review. As it stated: "[W]hen confronted with [the objectionable] testimony at trial, the defendant did not seek a *Franks* hearing; therefore, the court was not given the opportunity to determine whether [the witness'] inaccurate

statement was made knowingly and intentionally, or with reckless disregard for the truth . . . or whether it was necessary to the finding of probable cause . . . . As a consequence, the defendant's first claim must fail, as it does not meet the threshold requirement of *Golding* that the record be adequate for appellate review." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 33–34. That conclusion comports with the purpose of the preservation requirement, as "the essence of preservation is fair notice to the trial court . . . ." *State* v. *Miranda*, 327 Conn. 451, 465, 174 A.3d 770 (2018).

The logic of *Bangulescu* compels the same result in the present case, as it is undisputed that the defendant never requested a *Franks* hearing at any time during the probation revocation proceeding. The record further reveals that he did not distinctly raise with the trial court the claim he now pursues on appeal. As such, the claim is unpreserved.

Although unpreserved claims of constitutional dimension nonetheless may qualify for appellate review under *Golding*, such recourse is not available in the present case. Because the claim never was presented to the trial court, the record lacks the requisite findings as to (1) whether any allegedly false statements were knowingly and intentionally made with reckless disregard for the truth, and (2) whether those statements were necessary to the finding of probable cause. The defendant therefore cannot surmount *Golding*'s first prong, as the record is inadequate to review his unpreserved claim.[7]

## IV

The defendant also claims that the court abused its discretion in denying his motion for judicial disqualification on the ground of bias. We do not agree.

The following additional facts are relevant to this claim. After the state rested its case-in-chief during the adjudicatory stage of the hearing, defense counsel made an oral motion to dismiss. Counsel then informed the court that he had "a written memorandum in support of my motion to dismiss." In response, the prosecutor stated that he had not seen the defendant's motion. The court then recessed the proceeding to provide the prosecutor with an opportunity to review the motion.

When the hearing resumed, the court noted that the written motion that the defendant submitted was dated October 19, 2017. At that time, the prosecutor indicated that he was "still not prepared . . . to respond adequately. The motion is dated October 19th, and here we are, November 8th, and I just was handed it right after the state rested its case." The prosecutor thus requested an additional ten to fifteen minutes to review the defendant's motion. Defense counsel asked to be heard and stated that he could not have filed that motion

until he had heard the state's evidence. The following colloquy then occurred:

"[Defense Counsel]: I've been a trier of federal and state trials my whole adult . . . life. And good prudence is dictated to me that I wait to see all the evidence before I would file a motion that would argue the evidence. And the evidence before this court was that [the sentencing judge] issued a ruling that [the defendant] could have contact with minors as long as there was . . . supervision, the supervision was vetted, therefore there's no violation of [the court's] order. What's been confused here—

"The Court: Well, let's not argue the motion, counsel—

"[Defense Counsel]: Oh, I know. . . . [I]f [the prosecutor] wants more time to argue this, I don't have any problem with it, at all, or the judge to review it. There's no urgency in this. But I really could only file it. I want to make sure because Your Honor doesn't know me, as a practitioner, but I can tell you that seasoned defense counsel would wait until the evidence came out before they would file anything arguing the evidence.

"The Court: Well, I, too, have been a seasoned judge for some time.

"[Defense Counsel]: Right.

"The Court: And I know how to handle this procedure. I have been sitting in the criminal bench for some period of time. I take a little offense to the lecture from counsel as to whether or not this should have been filed now or otherwise.

"[Defense Counsel]: I certainly apologize to the court . . . it had nothing to do with the court.

"The Court: I think it's fair, then—I accept your apology.

"[Defense Counsel]: Yeah, I do. That was not the intention, the intention was to explain my own behavior, not imply anything against the court.

"The Court: All right, well I think it's fair for everybody to be able to have an opportunity to review this memorandum that's been filed just minutes ago, and it's now eight pages in length with an affidavit also that's attached from a person who has not testified in this court."

With the agreement of both parties, the court then took a midday recess to allow the prosecutor additional time to review the defendant's motion to dismiss. When that recess concluded, the court heard argument on the merits of the motion from both the prosecutor and defense counsel. The court then denied the motion to dismiss and asked defense counsel if he wanted to put on any evidence. In response, defense counsel stated: "Your Honor, at this time I'm going to ask that the

court disqualify itself, and I move for your recusal. A reasonable defendant sitting in this chair . . . would find that this court's ruling on the evidence in the beginning of the case, as well as the discord that Your Honor and I had prior to the break, would find that you would be partial and biased towards him; he felt that way. And I move that you disqualify yourself and recuse yourself from this hearing." After acknowledging the gravity of that request, the court indicated that it would ask another judge to rule on the defendant's motion for judicial disqualification.

Following a recess, Judge Diana presided over a hearing on the defendant's motion, at which the court heard argument from the parties and playback of the foregoing colloquy between defense counsel and the court. In ruling on the motion, the court stated in relevant part: "It's a fundamental principle that to demonstrate bias sufficient to support a claim of judicial disqualification, the due administration of justice requires that such a demonstration be based on more than opinion or conclusion. Vague and unverified assertions of opinion, speculation and conjecture cannot support a motion to recuse. The reasonable standard . . . is an objective one. The question is not only whether the particular judge is, in fact, impartial, but whether a reasonable person would question a judge's impartiality, based on the basis of all the circumstances. The law presumes that a duly elected or appointed judge, consistent with their oath of office, will perform their duties impartially and that they're able to put aside personal impressions regarding a party, the burden rests upon the party urging disqualification to show that it is warranted. . . . Based upon the evidence . . . my review of the [relevant] Practice Book section[s], the Code of Judicial Conduct, the exchange between counsel and [the trial court], the apology [by defense counsel] and the acceptance [of that apology by the court, the facts of this case do] not rise to [the level of] a disqualification. The motion, therefore . . . is denied."

As our Supreme Court has observed, "[r]ule 2.11 (a) (1) of the Code of Judicial Conduct provides in relevant part that [a] judge shall disqualify himself . . . in any proceeding in which the judge's impartiality might reasonably be questioned including, but not limited to, the following circumstances . . . [t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding. In applying this rule, [t]he reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . Moreover, it is well established that [e]ven in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the

appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority. . . . Nevertheless, because the law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially . . . the burden rests with the party urging disqualification to show that it is warranted." (Internal quotation marks omitted.) *State* v. *Milner*, 325 Conn. 1, 12, 155 A.3d 730 (2017).

Appellate review of the trial court's denial of a defendant's motion for judicial disqualification "is subject to the abuse of discretion standard. . . . That standard requires us to indulge every reasonable presumption in favor of the correctness of the court's determination." (Internal quotation marks omitted.) *State* v. *Petaway*, 107 Conn. App. 730, 736, 946 A.2d 906, cert. denied, 289 Conn. 926, 958 A.2d 162 (2008).

In the present case, the defendant claims that a reasonable person would question the trial court's impartiality on the basis of certain adverse rulings that it made during the hearing and the aforementioned colloquy regarding the filing of the defendant's motion to dismiss. With respect to the former, it suffices to note that "adverse rulings by the judge do not amount to evidence of bias sufficient to support a claim of judicial disqualification." *State* v. *Bunker*, 89 Conn. App. 605, 613, 874 A.2d 301 (2005), appeal dismissed, 280 Conn. 512, 909 A.2d 521 (2006). We further observe that the defendant's complaint that the court "offered no explanation for denying [his] right to confront the witness against him" is unfounded, as the defendant failed to bring that concern distinctly to the court's attention; see part I of this opinion; and he never requested an explanation or articulation from the court on that ruling, as expressly provided for in our rules of practice. See Practice Book §§ 64-1 and 66-5.

We also agree with Judge Diana that the colloquy regarding the filing of the motion to dismiss does not evince any partiality or bias on the part of the court. In that exchange, defense counsel clarified that his concern regarding the filing of the motion to dismiss "had nothing to do with the court" and offered an apology, which the court promptly accepted, stating, "I think it's fair then—I accept your apology." The court proceeded to grant a recess to afford the prosecutor additional time to review the defendant's motion and later heard argument from the parties before ruling on the merits of the motion. In sum, nothing in the transcript of the November 8, 2017 hearing reflects bias on the part of the court.

On our thorough review of the record before us, we cannot conclude that Judge Diana abused his discretion in concluding that a reasonable person would not question the court's impartiality on the basis of the circumstances present in this case. Accordingly, the

defendant's claim fails.

V

As a final matter, the defendant contends that the evidence adduced at the probation revocation hearing was insufficient to sustain the court's finding that he violated the terms of his probation. We disagree.

Under Connecticut law, a challenge to the court's determination during the adjudicatory phase of a violation of probation proceeding that a probationer has violated a condition of probation is governed by the clearly erroneous standard of review. As our Supreme Court has explained, in that adjudicatory phase the "trial court initially makes a factual determination of whether a condition of probation has been violated. In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling."[8] (Internal quotation marks omitted.) *State* v. *Hill*, 256 Conn. 412, 425–26, 773 A.2d 931 (2001).

In the present case, the record indicates that, prior to his release from incarceration, the defendant reviewed and signed the terms and conditions of his probation, including the approval condition, and thereby manifested his understanding of the necessity to abide by those conditions. At trial, Sullivan testified that the approval condition obligated the defendant to obtain his approval prior to having any contact with a minor child. Sullivan explained that he received a report that a fourteen year old female had been residing in the defendant's apartment for approximately one week in December, 2016. When Sullivan confronted the defendant about that accusation, the defendant initially denied having any contact with her, but later broke down and started crying. Sullivan testified that he asked the defendant why he was crying, and that the defendant then admitted that the fourteen year old female "was staying at his residence and that he was having contact [with her]."

Sullivan and Valentin also testified that the investigation also included a visit to the defendant's apartment, where they encountered a sixteen year old who informed them that the fourteen year old female currently "was staying at [the defendant's] residence" and had done so at several intervals throughout the year, including holidays and recesses from school. Sullivan testified that the defendant had not obtained his

approval for any such contact. The court, as trier of fact, was free to credit that testimony. *State* v. *Dunbar*, 188 Conn. App. 635, 642, 205 A.3d 747, cert. denied, 331 Conn. 926,     A.3d     (2019).

On the basis of that evidence, the court reasonably could find that the defendant violated his probation by not complying with the approval condition of his probation. The court's determination, therefore, is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Evidence presented at the probation revocation hearing indicated that the defendant's plea followed allegations of sexual and physical assault of a six year old child, "including digital penetration, fondling and physical abuse, which included beating her with a wire clothes hanger, and . . . punching her in the face, leaving bruising."

[2] Rosa did not testify at the probation revocation proceeding. Although the record indicates that Rosa was the defendant's wife at all relevant times, her surname is not specified therein. We therefore refer to her in this opinion by her first name.

[3] Although she acknowledged that Rosa was her aunt, the fourteen year old female testified that she had never met the defendant. She further testified that she had never visited the residence the defendant shared with Rosa. At the conclusion of the adjudicatory stage of the hearing, the court found that the fourteen year old female's testimony "was completely not credible" and that it contradicted the defendant's admission to the contrary.

[4] On appeal, the defendant raises no claim with respect to the dispositional phase of the probation revocation proceeding.

[5] In *Morrissey* v. *Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), a case involving a violation of parole hearing, the United States Supreme Court held that "minimum requirements of due process" mandate, inter alia, that a defendant be afforded "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation) . . . ." The United States Supreme Court subsequently held that the due process requirements recognized in *Morrissey* extend to probation revocation proceedings. *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).

[6] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

[7] In light of our conclusion that the record is inadequate for review, we need not consider the state's alternate contention that probation revocation hearings, being akin to a civil proceeding; see *State* v. *Taveras*, 183 Conn. App. 354, 364, 193 A.3d 561 (2018); fall outside the scope of *Franks*.

[8] By contrast, review of the court's determination during the dispositional phase of a probation revocation proceeding as to whether revocation is warranted is governed by the abuse of discretion standard. See *State* v. *Preston*, 286 Conn. 367, 377, 944 A.2d 276 (2008).