******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# GEOVANNY ZILLO *v.* COMMISSIONER OF CORRECTION
## (AC 41330)

Keller, Elgo and Bishop, Js.

*Syllabus*

The petitioner, who had been convicted of sexual assault in the first degree and risk of injury to a child, sought a writ of habeas corpus, claiming that his trial counsel provided ineffective assistance. At the beginning of the habeas trial, the petitioner informed the court that he was withdrawing certain of his claims, including a claim that his trial counsel was ineffective in failing to present certain medical testimony. On the second day of trial, which occurred nearly two months later, the petitioner requested that the court permit him to "unwithdrawn" that claim, but the court denied the request to reinstate the claim. The habeas court rendered judgment denying the habeas petition, from which the petitioner, on the granting of certification, appealed to this court. *Held*:

1. The habeas court did not abuse its discretion when it denied the petitioner's request to reinstate the claim he had withdrawn: that court reasonably recognized that almost all witnesses already had been examined when the request was made, and although not all of those witnesses would have been needed to address the claim, it would have been unfair to recall some witnesses after their dismissal, and to resurrect the claim would have required additional preparation and time to explore the claim with the previous witnesses; moreover, the petitioner waited nearly two months after the first day of trial to bring forth his request, which he could have explored at the end of the first day of trial or shortly thereafter, it was the petitioner who originally brought the claim forward and then subsequently elected to withdraw it, and his claim that the habeas court should have treated the request as a motion to amend the pleadings was inadequately briefed and not reviewable.

2. The petitioner's claim that the habeas court should have allowed into evidence documents that related to his medical condition was unavailing; because the habeas court never ruled on the issue of the admissibility with regard to the medical records, this court was unable to reach the merits of that issue on appeal.

3. The petitioner could not prevail on his claim that his trial counsel was ineffective in failing to pursue a motion to dismiss based on the statute of limitations in (§ 54-193a); because there was no credible evidence to show the actual commencement of the statute of limitations in March, 1999, in that there was no credible evidence to show that the victim had notified the requisite authorities in 1999, it was not unreasonable for the petitioner's trial counsel to conclude that a motion to dismiss, on that basis, was not worth pursuing, as it was not applicable to the present case.

4. The petitioner's claim that trial counsel was ineffective when he failed to object to allegedly harmful, inflammatory language in the state's substitute information that was read by the court clerk to the jury was unavailing; it was plain from the record that inflammatory details of the petitioner's perverse misbehavior came into evidence several times during the trial, and, therefore, there would have been no point in objecting to the recitation of the details underlying the charges, and because that information was adduced during the trial, the silence of the petitioner's trial counsel during the introductory part of the trial caused the petitioner no harm.

5. The petitioner could not prevail on his claim that his trial counsel was ineffective when he allegedly failed to assist the petitioner in freely choosing whether to testify in his own defense; the habeas court credited trial counsel's testimony that he had advised the petitioner against testifying and also that, ultimately, it was the petitioner's decision to make, and the petitioner admitted during the canvass that he was informed of the pros and cons about testifying from his trial counsel, that he was advised by his trial counsel not to testify and that he understood it was his right to testify, which supported a determination that it was the

petitioner's decision not to take the stand at his own criminal trial in conjunction with the sound legal advice of his attorney.

6. The habeas court properly determined that the petitioner's trial counsel was not deficient in failing to pursue a hearing pursuant to *Franks* v. *Delaware* (438 U.S. 154) in the pretrial stage of the criminal proceedings with regard to a warrant that authorized the arrest of the petitioner and the omission from the warrant of certain relevant exculpatory information; the habeas court found that because the police obtained the evidence before the petitioner's arrest, any defects relative to the arrest warrant had no bearing on the admissibility of the previously acquired evidence so as to taint the fairness of the petitioner's criminal trial, the petitioner adduced no credible evidence to demonstrate intentional or reckless omission of material facts by the police or prosecutor, and the petitioner's criticisms of the arrest warrant affidavit appeared trivial and inconsequential toward the finding of probable cause, as a review of the affidavit showed an abundance of incriminating evidence against the petitioner.

7. The petitioner's claim that his trial counsel provided ineffective assistance when he failed to obtain the victim's education records in order to undermine her allegations was unavailing; even if trial counsel was deficient in this regard, the petitioner was not prejudiced thereby, as he was unable to produce any records or evidence regarding the victim's school attendance to undermine her testimony that she sometimes arrived late because of the petitioner's sexual abuse, and the petitioner did not argue, nor did he demonstrate, any harm that was caused to him by the absence of the records.

8. The petitioner could not prevail on his claim that his trial counsel was ineffective in failing to file a motion to suppress evidence concerning photographs taken of the petitioner's apartment during an illegal search; this court disagreed with the notion that an attorney's decision to forgo a motion to suppress nonincriminating evidence, stemming from a not yet determined illegal search, constituted ineffective assistance of counsel under *Strickland* v. *Washington* (466 U.S. 668), nor could defense counsel be faulted for electing not to allocate time to the pursuit of eliminating evidence that, on its face, was not prejudicial to his client.

Argued September 23—officially released December 31, 2019

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the matter was tried to the court, *Sferrazza, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court; thereafter, the court, *Sferrazza, J.*, denied in part the petitioner's motion for an articulation; subsequently, this court granted the petitioner's motion for review but denied the relief requested therein. *Reversed in part; judgment directed.*

*Michael W. Brown*, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Eva Lenczewski*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The petitioner, Geovanny Zillo, appeals from the judgment of the habeas court denying his revised amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court (1) abused its discretion by denying his request to "unwithdraw" a claim and present medical evidence regarding his genitals, (2) improperly concluded that he was not denied the effective assistance of trial counsel, and (3) improperly concluded that he was not denied the effective assistance of appellate counsel. We conclude that the habeas court did not have subject matter jurisdiction over the third claim and dismiss that portion of the appeal.[1] We affirm the judgment of the habeas court as to the remaining two claims.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. In 2009, following a jury trial, the petitioner was convicted of three counts of sexual assault in the first degree, one count of attempt to commit sexual assault in the first degree, and four counts of risk of injury to a child. *State v. Zillo*, 124 Conn. App. 690, 691, 5 A.3d 996 (2010). The petitioner received a total effective sentence of thirty years of imprisonment, execution suspended after fifteen years, with fifteen years of probation. Id., 693. This court's opinion in the petitioner's direct appeal sets forth the following facts: "The family of the eleven year old victim in this case, all of whom emigrated to the United States from China, owned a Chinese restaurant that the [petitioner] frequented during 1998 and early 1999. During this time, the [petitioner] became friendly with the victim and her family, often assisting the children with their homework and with the English language. The [petitioner] was invited to family gatherings and holiday celebrations, and he purchased several gifts for the family, including a computer for the children and a $500 translator. The victim's parents eventually became concerned about the attention that the [petitioner] was showing the victim, especially his attempts to speak with her privately, and the family told the [petitioner] that he no longer was welcome at the restaurant. Accordingly, the [petitioner] stopped going to the restaurant.

"After the [petitioner] stopped going to the restaurant, he began to follow the victim and to pick her up as she waited for the bus to take her to school. The [petitioner] would take the victim to a house where he would sexually assault her. He also took her to a wooded area to take photographs of her, and he took her to a McDonald's restaurant. The victim testified that the [petitioner], whom she called G-Bunny, repeatedly sexually assaulted her when she was eleven years old. The [petitioner] made the victim remove her clothing, kissed her breasts, performed oral sex on her, digitally penetrated her vagina and her anus, licked her anus,

made her hold his erect penis in her hand, made her urinate into his mouth so that he could taste her urine to see if it was as 'sweet' as she and attempted to make her perform oral sex on him. The [petitioner] instructed the victim not to tell anyone about his behavior, and he told her that he wanted to marry her. He also gave her money.

"In 2005 or 2006, the [petitioner] established an account on the social website Myspace.com (MySpace) using the name AnnaLuckyOne, where he purported to be an Asian female and included a photograph of an unknown Asian female on his profile. He soon contacted the victim, who also had a MySpace account, and he attempted to establish a relationship with the victim by telling her that he was a young Asian girl. The [petitioner], acting as this young Asian girl, subsequently told the victim that the [petitioner] was AnnaLuckyOne's friend and asked if she would be willing to resume a friendship with him. Suspicious that her new friend really was the [petitioner] and not another young Asian female, the victim panicked and went to see her school counselor and her dormitory parent in whom she confided that the [petitioner] previously had sexually assaulted her. Soon thereafter, the victim filed a police report, and a warrant was issued for the [petitioner]'s arrest. The [petitioner] was tried on eight counts as set forth earlier in this opinion; he elected to be tried by a jury.

"The jury found the [petitioner] guilty on all eight counts as charged. The court accepted the jury's verdict and sentenced the [petitioner] to a total effective term of thirty years imprisonment, execution suspended after fifteen years, with fifteen years of probation." (Footnotes omitted.) Id., 692–93. The petitioner appealed his conviction to this court, which affirmed the judgment of the trial court.[2] Id., 706.

Shortly thereafter, the petitioner, acting as a self-represented party, filed a petition for a writ of habeas corpus and, after counsel had been appointed, he subsequently filed a revised amended petition for a writ of habeas corpus (revised amended petition). During the habeas trial, the petitioner asserted twelve claims that his criminal trial defense counsel, Attorney Jerry Attanasio, had provided ineffective assistance during his underlying criminal trial, as well as an ineffective assistance claim against his appellate counsel which, as previously noted, is not properly before this court. The habeas court denied all of the petitioner's claims. The petitioner filed a petition for certification to appeal the denial of his revised amended petition, which the court granted. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The petitioner first claims that the habeas court

abused its discretion by (1) denying his request to "unwithdraw" a claim that he raised in his habeas petition that defense counsel rendered deficient performance by failing to present evidence related to a medical condition of his genitals that would have been crucial to his defense and (2) excluding evidence related to his medical condition and making adverse findings based upon the evidence that the petitioner sought to rebut with the medical evidence. We disagree.

A

We first address the petitioner's claim that the court abused its discretion by denying his request to "unwithdraw" a claim concerning the features of his genitals. More specifically, the petitioner argues that the court should have treated the request to "unwithdraw" the claim set forth in paragraph 28 (R) of his revised amended complaint as a request to amend the pleadings to conform to the evidence. We are not persuaded.

We first set forth the standard of review and applicable legal principles that guide our analysis. With regard to a withdrawn claim, "[t]he trial court may exercise its discretion . . . to deny the reinstatement of a claim that has been expressly withdrawn. Only where the trial court has abused that discretion will this court order a reversal. [E]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . Demonstrating that the trial court has abused its discretion is a difficult task." (Citation omitted; internal quotation marks omitted.) *McKnight* v. *Commissioner of Correction*, 35 Conn. App. 762, 767–68, 646 A.2d 305, cert. denied, 231 Conn. 936, 650 A.2d 173 (1994).

The following additional procedural history is relevant to our review of the petitioner's claim. The habeas trial lasted for three days; however, the first and second days were nearly *two months* apart. At the beginning of the habeas trial, on October 6, 2017, the petitioner informed the court that he was withdrawing several of his claims, including the claim set forth in paragraph 28 (R) of his revised amended petition alleging that his right to effective assistance of trial counsel was violated because trial counsel's performance was deficient in that "[counsel] failed to present the testimony of John Antonucci, M.D., or other evidence of unusual features of the petitioner's genitalia . . . ." On the second day of trial, November 29, 2017, the petitioner requested that the court permit him to "unwithdraw" paragraph 28 (R), averring that there was information from the first day of trial that he did not expect to be presented in evidence and, as a result, he wanted to "pursue [the] issue at least somewhat." The court denied the request to reinstate that claim, recognizing that the habeas proceeding had "already gone through ten witnesses" and that "[i]t would be very difficult to reconstruct how those witnesses would have been questioned or not

questioned." Additionally, the court added that "it would be very unfair to reopen it and after we've had the attorney, trial attorney, the appellate attorney, [and] the expert witness [testify] . . . . [The petitioner] made the choice and sought to withdraw it."

We are not persuaded that the habeas court abused its discretion when it denied the petitioner's request to "unwithdraw" paragraph 28 (R). The court reasonably recognized that almost all witnesses already had been examined and, while not all of them would have been needed to address the claim set forth in paragraph 28 (R), it would still be unfair to recall some witnesses after their dismissal. Additionally, although the habeas court did not specifically address the issue of time, we are cognizant of the fact that the trial already had spanned two months. To resurrect a claim would require additional preparation and time to explore that claim with the previous witnesses. Furthermore, the petitioner waited nearly two months after the first day of trial to bring forth his request to "unwithdraw," something he could have explored at the end of the first day of trial or shortly thereafter. Lastly, as the habeas court observed, it was the petitioner who originally brought the claim forward and then subsequently elected to withdraw it.

With regard to his argument that the habeas court should have treated his request to "unwithdraw" as a motion to amend the pleadings to conform to the evidence, the petitioner has not provided any support for this argument and, accordingly, we decline to review it as it is inadequately briefed. See *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016) ("[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief" [internal quotation marks omitted]).

For the foregoing reasons, we conclude that the habeas court did not abuse its discretion when it denied the petitioner's request to "unwithdraw" paragraph 28 (R).

B

Next, the petitioner argues that the habeas court should have allowed into evidence documents that related to his medical condition.[3] The petitioner asserts that the court abused its discretion by not permitting him to introduce medical evidence related to the condition of his genitals. He argues that such evidence would have been relevant to a viable defense, which should have been presented at the petitioner's criminal trial, and that if such evidence had been introduced, it would have rebutted the testimony of trial counsel that the petitioner had refused to cooperate with the investigation into the issue. The petitioner further argues that this evidence was also relevant to several other claims he raised. Based on our review of the record, we are

unable to assess this claim because it appears that the habeas court never ruled on the proffered evidence relating to the petitioner's medical condition.

"It is elementary that to appeal from the ruling of a trial court there must first be a ruling." *State* v. *Kim*, 17 Conn. App. 156, 157, 550 A.2d 896 (1988). "[We] . . . will not address issues not decided by the trial court." (Internal quotation marks omitted.) *Lee* v. *Stanziale*, 161 Conn. App. 525, 539, 128 A.3d 579 (2015), cert. denied, 320 Conn. 915, 131 A.3d 750 (2016).

During the second day of trial, the petitioner informed the habeas court that there were a few issues he wanted to review before the trial continued, namely the "issue of medical records or medical condition that the petitioner has." The petitioner then moved right into a discussion of the withdrawn paragraph 28 (R). As the petitioner continued his presentation to the habeas court, his habeas counsel stated: "[M]y simple request is to unwithdraw [paragraph 28 (R)] . . . ." After hearing objections from the state's attorney, the habeas court ruled that it was "going to deny the request to reinstate [paragraph 28 (R)]." After the court's ruling, the petitioner continued, in an effort to try "to make [his] record," and primarily focused his arguments on why the claim in paragraph 28 (R) should be "unwithdrawn." At the conclusion of the petitioner's argument on this claim, the court opined, as previously noted, "you . . . sought to withdraw [the claim]."

It is apparent from the record that the habeas court never ruled, from the bench or in its memorandum of decision, as to the issue of allowing into evidence documentation on the petitioner's medical condition. The habeas court's ruling specifically addressed the petitioner's attempt to "unwithdraw" paragraph 28 (R) of his revised amended petition and nothing more. Because the habeas court did not rule on the issue of admissibility with regard to the medical records, we are unable to reach the merits of that issue on appeal.

II

We next turn to the petitioner's claim that the "habeas court erred by finding that the petitioner's right to the effective assistance of counsel was not violated at the petitioner's criminal trial." More specifically, the petitioner claims that trial counsel, Attorney Jerry Attanasio, failed to (1) pursue dismissal of the information under the applicable statute of limitations; (2) object to inflammatory information; (3) assist the petitioner in freely choosing whether to testify in his own defense; (4) pursue a *Franks*[4] hearing; (5) obtain the education records of the victim, R;[5] and (6) file a motion to suppress evidence. We address each claim in turn.

We begin our analysis with the well established standard of review. "A petitioner's right to the effective assistance of counsel is guaranteed by the sixth and

fourteenth amendments to the United States constitution, and by article first, § 8, of the Connecticut constitution. . . . In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given their testimony. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable. . . .

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . .

"[T]he Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim. . . . The [petitioner] is also not guaranteed assistance of an attorney who will make no mistakes. . . . What constitutes

effective assistance [of counsel] is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation." (Citation omitted; internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, 149 Conn. App. 681, 690–92, 89 A.3d 426 (2014), appeal dismissed, 321 Conn. 765, 138 A.3d 278, cert. denied sub nom. *Jackson* v. *Semple*,      U.S.      , 137 S. Ct. 602, 196 L. Ed. 2d 482 (2016).

"An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied. . . . It is axiomatic that courts may decide against a petitioner on either prong [of the *Strickland* test], whichever is easier. . . . In its analysis, a reviewing court may look to the performance prong or the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Citation omitted; internal quotation marks omitted.) *Echeverria* v. *Commissioner of Correction*, 193 Conn. App. 1, 9–10,      A.3d      , cert. denied, 333 Conn. 947,      A.3d      (2019).

A

First, the petitioner claims that the habeas court erred by not finding that his trial counsel provided ineffective assistance during his criminal trial when Attorney Attanasio failed to pursue a motion to dismiss based on the statute of limitations set forth in General Statutes § 54-193a.[6] The petitioner asserts that Attorney Attanasio knew that there might have been a statute of limitations issue and that his testimony at the habeas trial confirmed as much when he admitted to knowing about a confrontation between the petitioner and police during a traffic stop in 1999, during which police allegedly told the petitioner to stay away from R and her family because of allegations of sexual misconduct. Attorney Attanasio confirmed that *if* he felt that he could have submitted a motion to dismiss based on the statute of limitations, he "would absolutely [have] file[d] that." However, according to his additional testimony, Attorney Attanasio believed that the petitioner's case no longer fell within the statute of limitations; accordingly, Attorney Attanasio did not pursue a motion to dismiss. The petitioner further asserts that he was prejudiced by Attorney Attanasio's failure to pursue dismissal because there was "a reasonable probability that a motion to dismiss would have been successful . . . ." We disagree.

The following additional facts are relevant to the petitioner's claim. The petitioner claimed he was stopped and ticketed for motor vehicle violations on March 11, 1999. According to the petitioner, during that time, he was interrogated for over two hours while he remained in his car. He identified three police officers who participated in the interrogation: Howard Northrop, Dana Lent, and Richard Binkowski. Officers Northrop and Lent testified, however, that they had no

recollection of such an interrogation, while Trooper Binkowski testified that he never interacted with the petitioner on that date; nor did he possess any knowledge about R and incidents related to sexual assault.

In its opinion, the habeas court did not credit the petitioner's testimony nor did it find such an event, if it did occur, to be sufficient to implicate the running of the statute of limitations under § 54-193a. The habeas court relied, correctly, on our Supreme Court's decision in *State* v. *George J.*, 280 Conn. 551, 565–66, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007). There, the court held that the five year limitation in § 54-193a does not run unless "the *actual* victim notifies the specified authorities." (Emphasis added.) Id., 566. In the present case, there is no credible evidence that R notified the requisite authorities in 1999; on the contrary, she testified that she first spoke to law enforcement about the petitioner in 2006.

Because there was no credible evidence to show the actual commencement of the statute of limitations under § 54-193a in March, 1999, it was not unreasonable for Attorney Attanasio to conclude that a motion to dismiss, on that basis, was not worth pursuing, as it was not applicable to the present case. Therefore, under the first *Strickland* prong, we do not find that Attorney Attanasio's representation fell below an objective standard of reasonableness with regard to the petitioner's first claim.

B

Next, the petitioner claims that the habeas court erred by not finding that his trial counsel provided ineffective assistance when Attorney Attanasio failed to object to the harmful, inflammatory language in the state's substitute information read by the court clerk to the jury. Specifically, the petitioner argues that the habeas court "incorrectly concluded (1) only one part of the information was unnecessarily inflammatory, and (2) [that] later testimony about inflammatory details cured any error in their inclusion in the information." The petitioner further asserts he was prejudiced by the reading of graphic details in the information to the jury because "before any evidence was presented, without an opportunity for the defense to rebut those inflammatory details with a statement by the defense, the prosecutor started its case at an unfair advantage."

The following additional facts as found by the habeas court are relevant to the petitioner's claim. Initially, the state charged the petitioner with fifteen counts that involved risk of injury to a minor, sexual assault in the first degree, and attempted sexual assault in the first degree. The habeas court found it "appropriate and pragmatic" for the state to provide details of each crime to the jury in order to appropriately distinguish which

counts pertained to which act and that the "level of detail was especially necessary because the date of all the offenses was the same . . . ." However, the habeas court took issue with the information of then count four, which "averred that the petitioner disrobed the eleven or twelve year old victim . . . [and] that count unnecessarily particularized one of the removed garments as 'white Winnie-the-Pooh underwear.' " Despite finding the reference to Winnie-the-Pooh as "superfluous and potentially inflammatory," the habeas court held that it was harmless because those specific details came up several times throughout the trial in the form of (1) testimony from R "that the petitioner had a predilection for removing the Winnie-the-Pooh underwear from the victim" and (2) the petitioner gave R gifts related to Winnie-the-Pooh.

As previously noted, the second prong of *Strickland*, the prejudice prong, provides that in order to effectively prove ineffective assistance of counsel, a petitioner "must show that the deficient performance prejudiced the defense." (Internal quotation marks omitted.) *Jackson* v. *Commissioner of Correction*, supra, 149 Conn. App. 691. Under the prejudice prong, "counsel's deficient performance prejudice[s] the defense [if] there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . The second prong is satisfied if it is demonstrated that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citation omitted; internal quotation marks omitted.) *Crocker* v. *Commissioner of Correction*, 126 Conn. App. 110, 116, 10 A.3d 1079, cert. denied, 300 Conn. 919, 14 A.3d 333 (2011). Without showing harm, a petitioner cannot prove ineffective assistance of counsel. See id.

In the present case, the petitioner's core argument involving harm is that the inflammatory language in the information read to the jury allowed the state to shortcut its presentation of evidence and that this early recitation to the jury gave the state an unfair advantage. The record does not support this claim. As the record makes plain, inflammatory details of the petitioner's perverse misbehavior came into evidence several times during the trial. Therefore, there would have been no point in objecting to the recitation of the details underlying the charges. Additionally, because this information was adduced during the trial, counsel's silence during the introductory part of the trial caused the petitioner no harm. Accordingly, this claim fails.

C

The petitioner's third claim of ineffective assistance of counsel is that Attorney Attanasio failed to assist him in freely choosing whether to testify in his own defense. To support this claim, he points to Attorney

Attanasio's advice that the petitioner should not testify because the state produced an electronic disk, the contents of which were unknown, and the fact that Attorney Attanasio failed to put the disk in evidence or alert the court to the fact that it could not be accessed. The petitioner posits that these actions undermined his ability to make a reasoned decision about testifying at his criminal trial. He argues that his ability to testify "coherently and competently" at the habeas trial is evidence that Attorney Attanasio failed to properly protect the petitioner's decision to testify and, thus, he was prejudiced under *Strickland*. We are not persuaded.

The following additional facts are relevant to the petitioner's claim. During the habeas trial, the petitioner testified that (1) he created a fake internet identity via MySpace in order to lure R into a series of online message exchanges and (2) he did so in order to further pursue R and inquire about her allegations of sexual abuse. Additionally, Attorney Attanasio testified that the petitioner did not want to testify about or present evidence with regard to his genitalia. Attorney Attanasio also testified that he was hesitant about the petitioner testifying because he did not think the petitioner's explanations made any sense or that a jury would find him believable. Despite preparing the petitioner until 3:30 a.m. on the morning of his intended testimony, Attorney Attanasio was not confident that taking the stand was the best decision for the petitioner. That belief was strengthened by the state's production of the inaccessible disk just before that day's proceedings were set to begin.

Several times during the habeas trial, Attorney Attanasio testified that he did, in fact, advise the petitioner against testifying but that, ultimately, it was the petitioner's decision to make. The habeas court recognized in its decision that "[t]he trial judge diligently canvassed the petitioner concerning his decision [not to testify]. The petitioner acknowledged that he understood that the choice was his to make, that he had discussed the options with Attorney Attanasio, and that defense counsel had advised him as to the risks and benefits attendant to each option."

"[T]he appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is [through] a claim of ineffective assistance of counsel [pursuant to] [*Strickland*]. . . . As is the case in any such claim, the burden [is] on the petitioner to show that he was not aware of his right to testify . . . ." (Citation omitted; internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, 35 Conn. App. 527, 537, 646 A.2d 919, cert. denied, 231 Conn. 935, 650 A.2d 172 (1994). Before petitioners can claim they have been deprived of the right to testify, they "are required to take some affirmative action regarding [that] right . . . ." Id. In *Rodriguez*, this court concluded that

when a petitioner never expressed his desire to testify at trial and his counsel provided sound advice with regard to the pros and cons of the decision to testify, the petitioner could not then prevail on his claim that counsel's performance was deficient. Id., 536–37.

In the present case, the habeas court credited Attorney Attanasio's testimony that he advised the petitioner against testifying and also that, ultimately, it was the petitioner's decision to make. Additionally, during the canvass, the petitioner admitted that he was informed of the pros and cons about testifying from Attorney Attanasio, he was advised by Attorney Attanasio not to testify, and that he understood it was his right to testify. We conclude that it was the petitioner's decision not to take the stand at his own criminal trial in conjunction with the sound legal advice of his attorney. Without other evidence to show that Attorney Attanasio's advice against testifying was akin to undermining or preventing the petitioner from testifying, we are not persuaded that Attorney Attanasio's actions resulted in ineffective assistance of counsel.

D

The petitioner's fourth claim of ineffective assistance of counsel is that Attorney Attanasio failed to pursue a *Franks* hearing, in the pretrial stage of the criminal proceedings, with regard to (1) a warrant that authorized the arrest of the petitioner and (2) the omission from the arrest warrant of relevant exculpatory information from the online messages between R and the petitioner, in which R denied understanding what "AnnaLuckyOne"[7] was discussing but later claimed it was a reference to a urine fetish. According to the petitioner, the arrest warrant affidavit contained unreliable information from an unrelated incident where the petitioner was an uncharged person of interest. The petitioner argues that the habeas court incorrectly concluded that the legitimacy of the conviction remained intact despite the warrant lacking probable cause and that the court should have focused on whether a *Franks* motion would have been successful if competently pursued by Attorney Attanasio before the trial began. He also argues that if a proper *Franks* hearing had been conducted, there was a reasonable probability he would have been able to convince the court that there was not, in fact, probable cause to arrest the petitioner. We disagree.

"In [*Franks* v. *Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)], the United States Supreme Court held that 'where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the [f]ourth [a]mendment requires that a hearing be held at the

defendant's request.' . . .

As our Supreme Court has explained, before a defendant is entitled to a *Franks* hearing, the defendant must '(1) make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit; and (2) show that the allegedly false statement is necessary to a finding of probable cause.' " (Citation omitted.) *State* v. *Crespo*, 190 Conn. App. 639, 651, 211 A.3d 1027 (2019).

The habeas court articulated three reasons for not finding trial counsel ineffective with regard to this claim. The court stated: "First, the legitimacy of a conviction remains intact despite the fact that the arrest warrant application that initiated the criminal proceeding lacked probable cause . . . . That is, an unlawful arrest does not require dismissal of criminal charges, unless that illegality impaired the fairness of a subsequent trial . . . . In the petitioner's case, the salient evidence seized by the police was pursuant to a search warrant which predated the issuance and execution of the arrest warrant. That evidence included the petitioner's laptop computer, an external hard drive, and photographs of the petitioner's car and home. Also, the police interviewed the petitioner in conjunction with execution of the search warrant, and the petitioner revealed certain information used against him at his trial.

"Because the police obtained this evidence before his arrest, any defects relative to the arrest warrant had no bearing on the admissibility of the previously acquired evidence so as to taint the fairness of his criminal trial.

"Secondly, in order for Attorney Attanasio to seek a *Franks* hearing, he needed to harbor a good faith belief that he could present a substantial showing that the police affiants intentionally submitted a false or misleading arrest warrant application, or did so with reckless disregard, as to material matters pertinent to a probable cause determination by the issuing authority . . . . [The petitioner] submits that relevant information was intentionally or recklessly left out in order to mislead the judge.

"The court finds that the petitioner adduced no credible evidence to demonstrate intentional or reckless omission of material facts by the police or prosecutor. . . .

"Thirdly . . . a *Franks* hearing is only required if the correction of the misleading information would deprive the affidavit of sufficient facts to establish probable cause. In other words, if the unsullied portions of the affidavit still justify a finding of probable cause, no hearing is warranted . . . .

"A review of the arrest warrant affidavit shows an abundance of incriminating evidence against the peti-

tioner even if one considers the information that the petitioner argues was missing. The victim personally described in great detail to the police the various sexual, predatory, and injurious acts performed by the petitioner. The petitioner's own statement admitted engaging in a ruse to entice the victim to communicate with him, albeit unknowingly. The petitioner's criticisms of the affidavit appear trivial and inconsequential toward the finding of probable cause." (Citations omitted; emphasis omitted; internal quotation marks omitted.)

On the basis of our review of the record, we agree with the analyses and conclusions of the habeas court. Therefore, this claim fails.

E

The petitioner's fifth claim of ineffective assistance of counsel is that Attorney Attanasio failed to obtain R's education records. The petitioner argues that Attorney Attanasio should have subpoenaed R's education records in order to undermine her allegations that the petitioner would pick her up while she was on her way to school, for the purpose of sexually abusing her. He further argues that his trial attorney expert, who testified at the habeas trial, agreed that Attorney Attanasio was deficient in his performance for failing to obtain R's records. Lastly, he argues that if Attorney Attanasio had subpoenaed those records and they were not produced, the trial court would have been able to instruct the jury about the nonavailability of those records, pursuant to *State* v. *Morales*, 232 Conn. 707, 657 A.2d 585 (1995), which would have allowed the jury to draw inferences favorable to the petitioner, creating a reasonable probability of a different outcome of the trial. We are not persuaded.

First, we note the petitioner's misplaced reliance on our Supreme Court's decision in *Morales*. In *Morales*, our Supreme Court addressed the following two issues: "(1) what degree of protection the due process clause of our state constitution offers to criminal defendants when the police fail to preserve potentially useful evidence, and (2) what remedy should follow if the defendant has established that a failure to preserve such evidence has violated his state constitutional rights." Id., 713. *Morales* primarily concerns the failure of police to preserve potentially exculpatory evidence. See id., 728–29. In the present case, the petitioner's trial attorney elected not to obtain certain records that may or may not have been available at the time of trial or assisted the petitioner in his defense. We, therefore, find *Morales* to be inapposite to the present case.

Second, even if we were to conclude that Attorney Attanasio's failure constituted a violation of the performance prong under *Strickland*, we are unpersuaded that the petitioner was prejudiced as a result. In its decision, the habeas court concluded that the petitioner

failed to establish ineffective assistance of counsel as to this claim because the petitioner was unable to produce *any* records or evidence regarding R's school attendance to undermine her testimony that she sometimes arrived late because of the petitioner's sexual abuse. Additionally, the petitioner does not argue, nor does he demonstrate, any harm that was caused to him by the absence of these records. Without R's school records, or other evidence related to those records, we are not in a position to decide whether Attorney Attanasio's decision not to obtain them was prejudicial because those records could have just as easily affirmed R's claims as they could have affirmed the claims of the petitioner. We refuse to engage in such speculation. Therefore, we disagree with the petitioner that Attorney Attanasio's failure to obtain R's school records constitutes ineffective assistance of counsel.

F

The petitioner's final claim of ineffective assistance of counsel is that Attorney Attanasio failed to file a motion to suppress evidence with regard to photographs taken of the petitioner's apartment during an illegal search. The petitioner asserts that a search warrant executed by the investigating authorities was for 267 Old Town Farm Road in Woodbury, which is the address of his father, and that the petitioner's apartment is a "fully independently contained apartment that was attached to the main structure" of his father's residence. It is the petitioner's contention that the search warrant was illegal because "[t]he investigating authority did not obtain a search warrant that specified the petitioner's apartment"; therefore, Attorney Attanasio, who was aware of this issue, should have moved to suppress evidence of the seized photographs. The petitioner posits that, notwithstanding the fact that no incriminating evidence was found in the apartment, the state's reference to the messiness of his apartment through the photographs, was prejudicial because they reflected unfavorably on him "in general." The habeas court opined that this claim should fail for the lack of persuasive evidence connecting Attorney Attanasio's failure to move to suppress with either component of the *Strickland* test. We agree.

We disagree with the notion that an attorney's decision to forgo a motion to suppress nonincriminating evidence, stemming from a not yet determined illegal search, constitutes ineffective assistance of counsel under *Strickland*. We cannot fault a defense attorney for electing not to allocate time to the pursuit of eliminating evidence that, on its face, is not prejudicial to his client.

The form of the judgment is improper, the judgment of the habeas court is reversed only with respect to the petitioner's ineffective assistance of appellate counsel claim and the case is remanded with direction to render

judgment dismissing that claim for lack of jurisdiction; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] In his revised amended petition, the petitioner alleges that his appellate counsel's deficient performance prevented him from filing a timely petition for certification to appeal this court's affirmance of his judgment of conviction to our Supreme Court pursuant to Practice Book § 84-4. Notwithstanding that the petition for certification would have been late, because the petitioner never attempted to file a motion for permission to file a late petition for certification, the habeas court lacked jurisdiction to decide this claim. See *Janulawicz* v. *Commissioner of Correction*, 310 Conn. 265, 271–72, 77 A.3d 113 (2013) ("[w]e conclude that, despite the petitioner's failure to comply with the time period set forth in the Practice Book § 84-4 (a), the petitioner's habeas petition is not ripe for adjudication in view of the fact that the petitioner's injury is contingent on this court's denial of a motion to file a late petition for certification, a motion that the petitioner has never filed, because he will not suffer such an injury if this court were to grant his request for permission to file an untimely petition for certification to appeal"). Therefore, we will address only the petitioner's two other claims on appeal.

[2] The petitioner brought a direct appeal from his convictions before this court in 2010. See *State* v. *Zillo*, supra, 124 Conn. App. 691. In that appeal, the petitioner pursued two claims: (1) the trial court erroneously admitted 2188 photographs into evidence and (2) he was denied his constitutional right to a fair trial on the basis of prosecutorial impropriety. Id., 691–92. Specifically, the petitioner argued that the photographs were irrelevant to the charges he faced and highly prejudicial, and that the jury "could have concluded that because the [petitioner] possessed these [photographs] in 2006, he ha[d] a proclivity to Asian women and, because of that proclivity, he committed the charged offenses . . . ." (Internal quotation marks omitted.) Id., 694. With regard to the prosecutorial impropriety claim, the petitioner argued that "[t]he prosecutor made numerous statements to the jury during the state's closing argument that amounted to prosecutorial [impropriety] because the prosecutor vouched for the credibility of one of the state's key witnesses; his statements appealed to and inflamed the jury's emotions; and, his comments distracted the jurors from making their own independent judgment based on the evidence properly before the court." (Internal quotation marks omitted.) Id., 700–701. This court affirmed the judgment of the trial court, holding that the petitioner failed to demonstrate harmfulness with respect to the photographic evidence and that the comments made by the prosecutor were of the type previously deemed proper by our Supreme Court. Id., 700, 706.

[3] According to the habeas trial transcript, the petitioner had "medical records from the doctor that trial counsel said that the petitioner didn't attend appointments . . . [they] are from the time of around the criminal trial or the middle of the criminal trial."

[4] *Franks* v. *Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

[5] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[6] General Statutes § 54-193 provides in pertinent part: "Notwithstanding the provisions of section 54-193, no person may be prosecuted for any offense, except a class A felony, involving sexual abuse, sexual exploitation or sexual assault of a minor except within thirty years from the date the victim attains the age of majority or within five years from the date the victim notifies any police officer or state's attorney acting in such police officer's or state's attorney's official capacity of the commission of the offense, whichever is earlier, provided if the prosecution is for a violation of subdivision (1) of subsection (a) of section 53a-71, the victim notified such police officer or state's attorney not later than five years after the commission of the offense."

[7] "AnnaLuckyOne" was the MySpace account name the petitioner used to connect with R.