******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* MALIK T. DUNBAR
## (AC 46846)

Suarez, Clark and Seeley, Js.

### *Syllabus*

The defendant, who had been on probation in connection with his convictions, in two separate criminal dockets, of larceny in the second degree and sexual assault in the second degree, appealed to this court from the judgments of the trial court revoking his probation and imposing an effective sentence of seven years of incarceration. He claimed, inter alia, that the court violated his constitutional due process right to cross-examine adverse witnesses by failing to engage in a balancing analysis pursuant to *State* v. *Shakir* (130 Conn. App. 458) before admitting certain hearsay evidence. *Held*:

The trial court's finding that the defendant violated his probation in the sexual assault case was not based on his discharge from a certain sex offender treatment program and, thus, the defendant's claim that the court violated his constitutional right to due process by admitting certain evidence concerning his discharge from that program failed.

The trial court, having properly admitted into evidence, under the business records exception to the rule against hearsay, a discharge report from a domestic violence program that the defendant was required to attend as a special condition of his probation in the larceny case was not required, under *Shakir*, to balance the defendant's interest in cross-examination against the state's good cause for denying the right to cross-examination prior to admitting the report into evidence.

The trial court did not abuse its discretion in revoking the defendant's probation in each case, as the record demonstrated that the court properly considered the beneficial purposes of probation and balanced the defendant's interests in liberty and rehabilitation against the need to protect the public in rendering its judgments.

Argued February 10—officially released June 24, 2025

### *Procedural History*

Information, in each of two cases, charging the defendant with violation of probation, brought to the Superior Court in the judicial district of Waterbury, geographical area number four, where the cases were consolidated and tried to the court, *Kwak, J.*; judgment in each case revoking probation, from which the defendant appealed to this court. *Affirmed*.

*Chad L. Edgar*, assigned counsel, for the appellant (defendant).

*Olivia M. Hally*, deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Alexandra Arroyo* and *Marsha Beckford*, deputy assistant state's attorneys, for the appellee (state).

*Opinion*

SEELEY, J. The defendant, Malik T. Dunbar, appeals from the judgments of the trial court finding him in violation of, and revoking, his probations, pursuant to General Statutes § 53a-32,[1] that were imposed under two separate criminal dockets. On appeal, the defendant claims that the court (1) violated his right to due process under the federal constitution by failing to engage in a due process balancing analysis under *State* v. *Shakir*, 130 Conn. App. 458, 467, 22 A.3d 1285, cert.

---

[1] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation . . . the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation . . . .

"(c) Upon . . . an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation . . . shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf. . . .

"(d) If such violation is established, the court may . . . (4) revoke the sentence of probation . . . . If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence. . . ."

denied, 302 Conn. 931, 28 A.3d 345 (2011),[2] before admitting certain hearsay evidence and (2) abused its discretion in revoking his probation. We disagree and affirm the judgments.

The following facts, which the court reasonably could have found, and procedural history are relevant to our resolution of this appeal. The defendant was serving two separate terms of probation stemming from his convictions in two criminal cases. In *State* v. *Dunbar*, Superior Court, judicial district of Waterbury, Docket No. CR-14-0426962-T, he was convicted, on a plea of guilty, of larceny in the second degree in violation of General Statutes § 53a-123 (larceny case) and sentenced to ten years of incarceration, execution suspended after four years, followed by three years of probation. His probationary period initially commenced on September 10, 2018; however, on February 13, 2020, following a hearing, the court found the defendant in violation of his probation, revoked his probation and sentenced him to six years of incarceration, execution suspended after eighteen months, followed by probation for the remainder of the originally imposed term of probation. In addition to the standard conditions of probation that were imposed on the defendant, the court added, as a special condition, that he "[c]omplete the Explore program," a twenty-six session program

---

[2] Our courts previously have identified this analysis in a variety of ways, including as a "balancing test"; *State* v. *Polanco*, 165 Conn. App. 563, 571, 140 A.3d 230, cert. denied, 322 Conn. 906, 139 A.3d 708 (2016); as the "*Shakir* balancing test"; *State* v. *Tucker*, 179 Conn. App. 270, 281, 178 A.3d 1103, cert. denied, 328 Conn. 917, 180 A.3d 963 (2018); and as the "*Crespo* balancing test"; *State* v. *Wade*, 351 Conn. 745, 761, 333 A.3d 90 (2025); see *State* v. *Crespo*, 190 Conn. App. 639, 647, 211 A.3d 1027 (2019); whereas, it is referred to as an "interest-of-justice determination" by federal courts. (Internal quotation marks omitted.) *United States* v. *Diaz*, 986 F.3d 202, 211 (2d Cir. 2021). Because the parties and the court all have referred to the test in the present case as the *Shakir* balancing analysis, for the sake of consistency we do so as well in this opinion.

designed to educate participants on domestic violence, which is administered by Wheeler Clinic.

In *State* v. *Dunbar*, Superior Court, judicial district of Waterbury, Docket No. CR-19-0457609-T, the defendant was convicted, on a plea of guilty, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) (sexual assault case) on April 1, 2021. In that case, he was sentenced to ten years of incarceration, execution suspended after two years, followed by ten years of probation with special conditions. The conditions of probation imposed in relation to the defendant's sexual assault case required, inter alia, that he (1) "[s]ubmit to any medical and/or psychological examination, urinalysis, alcohol and/or drug testing, and/or counseling sessions required by the [c]ourt"; (2) register as a sex offender for a period of ten years; (3) not move from his place of residence or sleep elsewhere overnight without notifying and obtaining the permission of a probation officer; (4) engage in "[s]ex offender evaluation and treatment as deemed appropriate" by [the] Office of Adult Probation,[3] which required him to engage in a sex offender treatment program at The Connection, "a statewide community based human services agency that connects individuals with a variety of resources"; *In re Caiden B.*, 220 Conn. App. 326, 330, 297 A.3d 1025, cert. denied, 348 Conn. 904, 301 A.3d 527 (2023); (5) not have any contact with the victim and comply with a standing criminal protective order that was in effect until 2070 and that prohibited him from contacting the victim; (6) "notify [his] [p]robation [o]fficer of any new or existing romantic or sexual relationship"; and (7) not go to or loiter near places primarily used by children under the age of sixteen or where children might congregate, including, inter alia, any "malls,"

---

[3] We note that, in 2022, the Office of Adult Probation was dissolved and replaced with Adult Probation Services. See footnote 18 of this opinion. We will use both office titles in this opinion as appropriate.

"fairs," "carnivals," "flea market[s]" or "beaches." The defendant's probationary period for both cases commenced on October 28, 2021, upon his release from the custody of the Department of Correction.

By April, 2022, Deanna Recchia, the defendant's probation officer, had become aware of numerous potential violations of probation committed by the defendant. First, in January, 2022, she learned that the defendant twice had gone to the Brass Mill Center, a mall in Waterbury. Next, in February, 2022, during a compliance check of the defendant's cell phone, she learned that he had contacted the victim in his sexual assault case. Later that month, Recchia was notified that the defendant had been discharged from Wheeler Clinic after refusing to agree to comply with the intake and attendance rules for participation in the Explore program. Then, in March, 2022, Recchia learned that the defendant had begun a new romantic relationship and moved from his place of residence without notifying her. At some point, Recchia also became aware that the defendant had been unsuccessfully discharged from services at The Connection. Finally, on April 21, 2022, Recchia discovered that the defendant had failed to update his address on the sex offender registry during a sex offender registry compliance check. Recchia subsequently applied for two warrants to arrest the defendant—one for each of his separate terms of probation—and, on April 29, 2022, the court issued arrest warrants for the defendant for violations of probation pursuant to § 53a-32. The defendant was arrested on May 5, 2022. Subsequently, Recchia requested and received a discharge report from Wheeler Clinic relating to the defendant's discharge from the Explore program (discharge report).[4]

---

[4] The discharge report from Wheeler Clinic is dated June 5, 2023, was prepared by "Kelly W.," and was transmitted electronically from Wheeler Clinic to Recchia. The title at the top of the document reads: "Judicial Branch Court Support Services Division Explore Discharge Report." The report contains a "[f]inal [m]onth [p]rogress [n]ote" stating that "[the defen-

A consolidated probation revocation hearing took place before the court, *Kwak, J.*, on June 12, 2023. At the outset of the hearing, as a preliminary matter, defense counsel raised a concern to the court regarding certain hearsay evidence that the state might elicit from Recchia regarding, inter alia, the defendant's participation in the court-ordered programs at Wheeler Clinic and The Connection, and requested that the court perform a balancing test pursuant to *State* v. *Shakir*, supra, 130 Conn. App. 467,[5] when deciding whether to admit such hearsay evidence.[6] The court responded that it

dant] did not attend any Explore group sessions." It also contains a "[d]etails" section that lists various entries from February, 2021, to February, 2022, summarizing unsuccessful attempts made by staff at Wheeler Clinic to complete the defendant's intake, as well as attempts that had been made to contact the defendant and any responses from him, including that he would not "agree to group rules as attendance policy is not reasonable." A notation on the report states that, because the defendant "refused to agree to the rules and expectations of the Explore [p]rogram," the client care coordinator for the program "was unable to complete the intake and recommended that the [defendant] follow up directly with his probation officer." The report further notes that the defendant was discharged from Wheeler Clinic on February 23, 2022, due to his refusal to agree to the rules and expectations of the program.

[5] "In *State* v. *Shakir*, [supra, 130 Conn. App. 467], we noted that the due process safeguards [guaranteed in a probation revocation proceeding] are codified in Federal Rule of Criminal Procedure 32.1 and include 'an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear. . . .' . . . We further explained that the court must balance the defendant's interest in cross-examination against the state's good cause for denying the right to cross-examine. . . . Specifically, we cited to case law from the United States Court of Appeals for the Second Circuit and stated: 'In considering whether the court had good cause for not allowing confrontation or that the interest of justice [did] not require the witness to appear . . . the court should balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay.' " (Citation omitted.) *State* v. *Polanco*, 165 Conn. App. 563, 570–71, 140 A.3d 230, cert. denied, 322 Conn. 906, 139 A.3d 708 (2016).

[6] Specifically, defense counsel stated in relevant part: "[T]he defense anticipates that the state is going to . . . bring on one witness, the probation officer who supervised [the defendant] and then through that probation officer intends to elicit hearsay evidence about information they didn't have

would "take [counsel's] objections into mind" as the case moved forward with the presentation of evidence. The court then heard testimony from Recchia, who described the previously discussed violations of probation by the defendant as alleged by her in the arrest warrants.

During the state's direct examination of Recchia, defense counsel again objected when the prosecutor asked Recchia if she had "receive[d] information as to whether [the defendant] had completed his court-ordered [Explore] program" and if she "ever sp[oke] to anyone over at the Explore program as to what exactly happened." Defense counsel stated that the ground for his objection was hearsay and asked "that the court perform a balancing test as in *Shakir* to determine whether or not somebody from Explore should come here. I think the court needs to come to a determination of why . . . a witness isn't being called in order to allow hearsay testimony about what they would testify to." The court overruled both objections. In doing so, the court stated: "[O]bviously, we have a discharge report which is a business record kept in a normal business so, that's allowed, and since the information is in there, I'm going to allow . . . Recchia to testify as to what she heard from Wheeler Clinic. So, based

firsthand knowledge of. For example, his participation in the sex offender program, [and] his participation in the Explore program. Both of those are run by other entities . . . and the defense anticipates the hearsay testimony is going to come in through this one witness on each of these topics . . . . So, we ask that instead of, you know, objecting at the exact moment that these things may be elicited, I just ask now that the state or the court consider . . . [*Shakir*] and perform a balancing test when deciding whether or not to admit the hearsay evidence in those . . . areas from those . . . sources. The court would need to find good cause for specifically not allowing confrontation, that case relies on the confrontation—the right to confront witnesses against [the defendant] and by not having these people come in, it limits his right to confrontation so there needs to be, the defense would argue, some justifiable reason for not bringing these people in to testify in front of the court and allow them to be cross-examined."

on her experience as well as the number of times that she speaks with providers from Wheeler [Clinic], not on just [the defendant's] case but in other cases, I find that it's reliable so I'm going to overrule your motion to have other people from Wheeler Clinic be here in person."

Nonetheless, defense counsel further argued that "the [discharge report] is not in evidence at this point. It's a business record . . . . [T]here's no one from Wheeler [Clinic] to authenticate it as that, and under *Shakir* the court's heard nothing about why this witness hasn't been produced. There needs to be good cause as to why we're using hearsay . . . rather than somebody from there and I would argue if the excuse is, 'We just didn't call them because we didn't think we had to,' I don't believe that's sufficient to allow somebody else to testify to the information that they know." After hearing from the prosecutor,[7] the court reiterated its prior ruling on the defendant's hearsay objections, stating: "I'm going to allow . . . Recchia to continue to provide testimony and, if I believe that there's [a] need for someone from Wheeler Clinic to be here in person, then I can make that decision afterwards." The state subsequently laid a foundation for Recchia's familiarity with the discharge report, eliciting testimony from her that Adult Probation Services electronically receives such discharge reports "when someone is discharged either successfully or unsuccessfully," and that such

---

[7] In response to defense counsel's objections, the prosecutor argued: "[T]he state didn't produce the witness from Wheeler [Clinic] because it's not necessary because it is reliable that he did not successfully complete the program. It's reliable because probation works with—the probation office works with Wheeler Clinic on supervising thousands of probationers. Quite frankly, there is case law . . . that treatment letters are admissible at a violation of probation hearing. So, [defense] counsel's—I think his reliance on *Shakir* is misplaced because reliable hearsay is admissible, and I think that's exactly what we have here."

documents are prepared in the ordinary course of business at or near the time when the probationer is discharged.

The state then offered the discharge report as a full exhibit, and defense counsel requested an opportunity to conduct voir dire.[8] Following his voir dire, defense counsel objected to the admission of the discharge report into evidence on hearsay grounds and asked the court to engage in a *Shakir* balancing analysis. Specifically, defense counsel argued that the discharge report did not qualify as a business record because "it was not produced . . . close to the time [of] the events that are described in it" and because Recchia was not the proper witness through which the alleged business record could be introduced, as she did not produce the document herself.[9] After excusing the witness, taking

[8] Defense counsel's voir dire proceeded as follows:

"[Defense Counsel]: When was that document produced?

"[Recchia]: Because it was a subpoenaed document, I called and asked them to actually send it and then I provided [it] to the judge per our policy for treatment records.

"[Defense Counsel]: I'm going to ask it again, when was that document produced?

"[Recchia]: This is dated June 5 of 2023.

"[Defense Counsel]: Okay, and did you produce that document?

"[Recchia]: I did not produce this document. I requested the document from Wheeler [Clinic], and they sent it. I then printed it and provided it to the court and to the judge that was going to be sitting in and asked to provide a copy to the state's attorney and the defense attorney for this [violation of probation] hearing."

[9] In particular, defense counsel argued in relevant part: "I would object that the document is hearsay, it was not produced even close to the time [of] the events that are described in it. It was produced days ago and it's describing events that happened over a year ago and it wasn't produced by this witness, there's not a proper foundation to submit this document in evidence as a business record. . . . [I]n order for it to be admitted as a business record, it has to be generated close in time to the events that are described within the record. This was not. This was generated in preparation for this hearing, not to document the events that are described in it. It was produced the other day . . . . [This is] talking about things that happened in 2021 and 2022, as the witness said. Here we are in the middle of June of 2023. So, just on that part of a business record admission it shouldn't come

a brief recess and hearing from the prosecutor and defense counsel, the court overruled the defendant's objection, stating in relevant part: "I reviewed [§ 8-4 of] the Connecticut Code of Evidence[10] . . . which specifically talks about the admissibility of business entries even without the preparer being present go[ing] to the weight of the evidence, not to admissibility. So, I'm going to deny your motion to preclude this document because [the] court finds that it is a business record." (Footnote added.) Following the court's ruling, the discharge report was admitted into evidence, and the state continued with its direct examination of Recchia.

Shortly thereafter, the state questioned Recchia about whether the defendant was compliant with his court-ordered participation in the program at The Connection, to which defense counsel objected, arguing in relevant part: "[T]hey haven't produced the witness. I'd ask that the court make a finding under . . . *Shakir* that there's good cause for not producing someone from The Connection to provide testimony about [the defendant's] work in that program." In response, the prosecutor argued in relevant part: "[T]his is reliable hearsay

in. But then also, this isn't the witness where this would come in as a business record. This is a witness who had requested the document be produced by somebody else but didn't produce it [her]self. . . . It's something that [she] obtained in the course of [her] work, but it's not something that she produced. So, on those two grounds I'd say this just isn't the witness to bring it in and it wasn't produced close enough in time to the events that are described today. . . . [U]nder *Shakir*, there needs to be a weighing of [the defendant's] constitutional right, and this is for a violation of probation hearing, to confront witnesses against him with this reason for why this person isn't here."

[10] Section 8-4 of the Connecticut Code of Evidence provides in relevant part: "(b) . . . The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

that is probative as to why [the defendant] was unsuccessful in his probation. So, the state is not required to produce them because again, the rules of evidence do not apply to this type of hearing." After hearing from both of the parties' counsel, the court overruled the defendant's objection without providing an explanation, and the contested question was then asked and answered.[11]

At the close of the evidentiary phase, the court recessed briefly before returning and making the following relevant findings. The court found that the state had proven, by a fair preponderance of the evidence, that the defendant had violated the conditions of his probation, and it found Recchia's testimony concerning the defendant's activities "to be very credible . . . ." The court then set forth the specific conditions of which it had found the defendant to be in violation, namely, the conditions that he complete the Explore program, inform the sex offender registry of his current address, not start a new romantic relationship without prior approval, not contact the victim of the sexual assault in violation of the standing criminal protective order, and stay away from areas where minors may be present, which included malls.[12]

---

[11] In particular, the relevant questioning of Recchia by the state proceeded as follows:

"[The Prosecutor]: Did you receive any information as to [the defendant] with regard to his compliance in The Connection program?

"[Recchia]: Yes.

"[The Prosecutor]: And what was that?

"[Recchia]: Well, he was noncompliant for several variables. One was he communicated with the victim. One was not attending sessions regularly. His first intake appointment, my recollection is he had overslept and didn't make the first appointment, and I believe that's in my warrant. But when he did complete his intake, he didn't attend as he was scheduled to, and [engaged in] victim contact and noncompliance with probation. Therefore, he was unsuccessfully discharged."

[12] Notably, the court did not find a violation of probation on the basis of the defendant's discharge from sex offender treatment at The Connection.

Thereafter, the court heard from counsel regarding the dispositional phase,[13] after which it found that the "beneficial aspects of probation were not being served" by the defendant continuing probation. Notably, the court stated: "I need to consider the well-being of society and the victim in this matter, particularly the victim in this matter, the underlying [sexual assault case]. [The] court is extremely concerned that, after pleading guilty to this charge, sex with a minor fourteen year old, he continued to contact the victim in violation of a standing criminal protective order. I'm very concerned with that and as well as the conditions of probation. [The] court finds that society will not be well served with [the] defendant continuing on probation." The court also stated its belief that the defendant "was basically picking and choosing what he wanted to follow, and [that] he can't do that," and that "all [of] those factors necessitate that the defendant no longer be on probation." It therefore rendered judgments[14] revoking the defendant's separate term of probation in each case and sentenced the defendant to a total effective term of seven years of incarceration.[15] This appeal followed.

I

On appeal, the defendant claims that the court's admission of certain hearsay evidence at the revocation of probation hearing violated his constitutional right to

[13] We note that, during the evidentiary phase, Recchia testified as to her belief that continuing the defendant's probation would not serve a useful rehabilitative purpose for the defendant due to his issues with authority and history of noncompliance with conditions of probation.

[14] We note that, although the record does not contain a written decision of the trial court, it does include a signed transcript of the court's oral decision. See Practice Book § 64-1 (a).

[15] With respect to the sexual assault case, the court sentenced the defendant to seven of the eight years of incarceration that had been suspended. As to the larceny case, the court sentenced the defendant to four years and six months of incarceration that had been suspended, to run concurrently with the sentence it imposed in the sexual assault case.

due process. Specifically, his claim pertains to three pieces of evidence: (1) Recchia's testimony about the defendant's discharge from the program at The Connection, which relates to the sexual assault case; (2) a letter concerning the defendant's discharge from the sex offender treatment program at The Connection (letter), which also concerns the sexual assault case; and (3) the discharge report from the Explore program, which concerns the larceny case.[16]

---

[16] On appeal, the defendant has not raised a separate claim concerning Recchia's *testimony about* the discharge report. Although he notes in his principal appellate brief that defense counsel objected at trial to hearsay testimony from Recchia about the defendant's discharge from the Explore program, the claim raised in his appellate brief focuses on the court's admission of the discharge report under the business records exception to the hearsay rule. In the section of his brief addressing the harmfulness of the court's alleged error in admitting the report, he asserts, without citation to authority, that "the trial court also erroneously admitted into evidence statements from representatives of the [Explore program] regarding [the defendant's] discharge because they were not made by the declarants in court but through the probation officer. They were rank hearsay not subject to any hearsay exception. Without the discharge [report] and the hearsay statements of the [program's] representatives, the [court] had no basis to find that [the defendant] was discharged from . . . the Explore . . . program." To the extent that this can be construed as raising a due process claim regarding the admission of Recchia's testimony, we conclude that any such claim is inadequately briefed and decline to review it. See, e.g., *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008) (noting that when "an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived" (internal quotation marks omitted)); *State* v. *Nathaniel T.*, 230 Conn. App. 45, 52–53, 329 A.3d 285 (2024) (declining to review claim as inadequately briefed when defendant did not provide any analysis or citation to authority in support of claim).

Although the defendant's failure to challenge Recchia's testimony about his discharge from the Explore program would ordinarily be fatal to his challenge to the admission of that same information via the discharge report; see, e.g., *State* v. *Martinez*, 171 Conn. App. 702, 758 n.20, 158 A.3d 373 (any error in failure to suppress defendant's written statement to police would have been harmless given that statement was cumulative of other evidence, admission of which defendant did not challenge), cert. denied, 325 Conn. 925, 160 A.3d 1067 (2017); we nevertheless address his claim regarding the admission of the discharge report under the business records exception to the hearsay rule, given the lack of clarity in his brief.

We begin by setting forth our standard of review and general principles of law pertaining to revocation of probation proceedings. "A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. If a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. . . . [A] probation revocation proceeding is civil in nature and, therefore, does not require all of the procedural components associated with an adversary criminal proceeding. . . . As such, the state's burden in probation revocation proceedings is governed by the fair preponderance of the evidence standard, which is the ordinary civil standard of proof." (Citation omitted; internal quotation marks omitted.) *State* v. *Giovanni P.*, 155 Conn. App. 322, 326, 110 A.3d 442, cert. denied, 316 Conn. 909, 111 A.3d 883 (2015).

"Whether a party was deprived of his due process rights is a question of law to which appellate courts grant plenary review." (Internal quotation marks omitted.) *Houghtaling* v. *Commissioner of Correction*, 203 Conn. App. 246, 279, 248 A.3d 4 (2021). "The due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation. . . . Th[is] . . . [c]ourt, relying on United States Supreme Court cases, has held that those federal due process protections include a defendant's right—albeit, not an absolute right—to confront adverse witnesses at a probation revocation hearing. See *State* v. *Shakir*, [supra, 130 Conn. App. 467–68 and 467 n.6] . . . see also *Gagnon* v. *Scarpelli*, [411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973)] (due process guarantees are

identical for revocation of parole, probation and supervised release); *Morrissey* v. *Brewer*, [408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)] (due process mandates at parole revocation hearings the right to confront and cross-examine adverse witnesses . . . unless the hearing officer specifically finds good cause for not allowing confrontation . . . ). In [*State* v. *Crespo*, 190 Conn. App. 639, 647, 211 A.3d 1027 (2019)], th[is] . . . [c]ourt reiterated its previous holdings and held that [t]he exercise of the right to confront adverse witnesses in a probation revocation proceeding is not absolute, but rather entails a balancing inquiry conducted by the court, in which the court must balance the defendant's interest in cross-examination against the state's good cause for denying the right to cross-examine. . . . In considering whether the court had good cause for not allowing confrontation or that the interest of justice [did] not require the witness to appear . . . the court should balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Wade*, 351 Conn. 745, 758–60, 333 A.3d 90 (2025).

We also, however, have recognized that "[f]ederal decisions have suggested . . . that [a] court is not required to conduct such balancing in all circumstances. [U]nder [*United States* v. *Jones*, 299 F.3d 103, 113 (2d Cir. 2002)], *the balancing analysis need not be made* where the proffered out-of-court statement is admissible under an established exception to the hearsay rule." (Emphasis added; internal quotation marks omitted.) *State* v. *Giovanni P.*, supra, 155 Conn. App. 335; see id., 336. With these principles in mind, we turn to the defendant's due process claim.

## A

We first address the defendant's due process claim as it relates to the evidence at issue in the sexual assault case. The defendant claims that the court violated his constitutional right to due process by admitting into evidence a letter concerning his discharge from sex offender treatment at The Connection, as well as Recchia's hearsay testimony about his discharge from The Connection. We disagree.

First, the defendant misconstrues the court's decision because, although the letter was referenced at trial during Recchia's testimony, the letter was never admitted into evidence as a full exhibit. Second, although Recchia testified about the defendant's noncompliance with the program at The Connection, the court did not base its determination that the defendant violated his probation on his discharge from The Connection. Rather, the transcript of the revocation of probation proceeding shows that the court found that the defendant violated his probation in the sexual assault case by (1) failing to update his address with the sex offender registry, (2) starting a new romantic relationship without notifying his probation officer, (3) violating a standing criminal protective order by having contact with the victim, and (4) violating the condition of his probation that he stay away from areas where minors may be present.[17] The defendant's claim with respect to the letter and testimony relating to his discharge from The Connection is thus premised on a ground on which the court did not base its decision. In other words, because the court's finding that the defendant violated his probation in the sexual assault case was not based on his discharge from

---

[17] The defendant has not challenged these other findings that supported the court's determination that he violated his probation in the sexual assault case. In his principal appellate brief, he states: "Here, [the defendant] was found in violation of other conditions of probation where the evidence supporting those violations cannot be successfully challenged."

the program at The Connection, his claim that the court revoked his probation on the basis of improperly admitted evidence concerning his discharge from the program at The Connection necessarily fails. See *State* v. *Muhammad*, 117 Conn. App. 181, 185–87, 979 A.2d 501 (2009) (there was no merit to claim that court revoked defendant's probation on basis of clearly erroneous finding when record showed that court did not base decision to revoke probation on alleged finding); see also *State* v. *Brito*, 170 Conn. App. 269, 295 n.9, 154 A.3d 535 (declining to address aspect of claim that concerned ground on which court did not base its decision), cert. denied, 324 Conn. 925, 155 A.3d 755 (2017); *Chief Disciplinary Counsel* v. *Rozbicki*, 150 Conn. App. 472, 482 n.8, 91 A.3d 932 (claim that court improperly based denial of motion for summary judgment on defendant's failure to plead preclusion claims by way of special defense was misplaced because court did not base its decision on that ground), cert. denied, 314 Conn. 931, 102 A.3d 83 (2014).

B

Next, the defendant claims that the court violated his constitutional due process right to cross-examine adverse witnesses by failing to engage in a balancing analysis pursuant to *Shakir* when it admitted the discharge report into evidence. We disagree.

The following additional facts are relevant to our resolution of his claim. Recchia testified that she has been working as a probation officer for eighteen years and that her work "entails ensuring that [probationers] are complying with court orders, community safety, and also aiding in their rehabilitation . . . . " As part of her duties, she regularly refers probationers "for programs associated with their risk and needs," she works "closely with treatment providers," and she is responsible for making "daily decisions on anything

that's going on with [probationers] and for communicating and collaborating with treatment agencies . . . ." When a court orders a specific treatment as a condition of probation, like the requirement that the defendant complete the Explore program, Recchia makes a "referral for the program that the court ordered and then [she makes] sure that—[she] attempt[s] to make sure that the [probationer] completes—participates and completes that program successfully." She explained further that, "once a referral is made, the treatment provider will let [her] know when the intake is scheduled for or when the intake is completed and when the [probationer] is scheduled to begin their program. . . . Treatment providers provide status reports [at] a minimum of once a month. If someone is not compliant with what we are asking them to do, such as an intake or attending treatment sessions, then they will be letting us know a probationer missed a treatment session, we get those notices all the time. Any time it's one of our providers, when someone misses a treatment session, or does not do what they are asked . . . then we are notified. . . . The treatment provider puts information into their case management system and then that information gets put in our case management information system if it's one of our providers." Wheeler Clinic is a contracted provider with the Judicial Branch's Court Support Services Division.[18]

With respect to the Explore program in particular, Recchia testified that she regularly communicates with

[18] General Statutes § 51-1d provides in relevant part: "There is established a Court Support Services Division within the Judicial Branch consisting of Adult Probation Services, Family Services, Pretrial Services, Juvenile Services and Juvenile Clinical, Educational and Residential Services. Notwithstanding any provision of the general statutes, the duties of the various offices, divisions and personnel which comprise the Court Support Services Division are transferred to the Court Support Services Division, and the Office of Adult Probation, Office of Alternative Sanctions, Office of the Bail Commission, Family Division and Juvenile Detention Services Division are dissolved. . . ."

individuals responsible for administering the program with regard to all probationers, not just the defendant, and that such individuals regularly give her updates regarding how probationers are doing. She further testified that she received information that the defendant had been discharged from the Explore program in February, 2022, "because he did not agree to comply with their rules of doing the intake and attending the treatment sessions." When asked if she ever spoke with anyone at the Explore program as to what exactly happened, she responded that she did. The prosecutor then showed her the defendant's discharge report from the Explore program, and she explained that she receives such documents electronically for any probationer that is discharged from the program and that such document is prepared in the ordinary course of business, at or near the time when the probationer is discharged. When questioned by defense counsel, Recchia acknowledged that she did not produce the document but, rather, had requested it, and that, after it was sent to her electronically, she printed it and provided it to the court.

Because the court overruled the defendant's objection to the admission of the discharge report on the ground that it was admissible as a business record, we first must examine whether the court's ruling was proper, as we have stated that, if the "proffered out-of-court statement is admissible under an established exception to the hearsay rule"; (internal quotation marks omitted) *State* v. *Giovanni P.*, supra, 155 Conn. App. 335; a court need not undertake a *Shakir* balancing analysis. See id.

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. . . . If the proffered evidence consists of business records, the court must determine whether the documents satisfy the

modest requirements under [General Statutes] § 52-180[19] to admit them under the business records exception to the hearsay rule. . . . To be admissible under the business record[s] exception to the hearsay rule, a trial court judge must find that the record satisfies each of the three conditions set forth in . . . § 52-180. The court must determine, before concluding that it is admissible, [1] that the record was made in the regular course of business, [2] that it was the regular course of such business to make such a record, and [3] that it was made at the time of the act described in the report, or within a reasonable time thereafter. . . . In applying the business records exception, the statute . . . should be liberally interpreted. . . . In part, this is because the statute recognizes the inherent trustworthiness of documents created for business rather than litigation purposes. . . . [Our Supreme Court] repeatedly has held that [i]t is not necessary . . . that the witness have been the entrant himself or in the employ of the business when the entry was made. . . . It is sufficient for a witness to testify that it was the regular business practice to create a document within a reasonable time after the occurrence of the event. This is sufficient to ensure that the document was created at

---

[19] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

the time when the event was fresh in the author's mind. . . . To require the defendant to produce a witness that could testify from personal knowledge as to the specific time that a particular document was made would unduly constrain the use of the business records exception and directly contradict the liberal interpretation that this court has accorded to § 52-180." (Citations omitted; footnote added; internal quotation marks omitted.) *State* v. *Williams*, 202 Conn. App. 355, 364–65, 245 A.3d 830, cert. denied, 336 Conn. 917, 245 A.3d 802 (2021).

"To the extent [that] a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Bonds*, 172 Conn. App. 108, 116–17, 158 A.3d 826, cert. denied, 326 Conn. 907, 163 A.3d 1206 (2017). Because the defendant challenges the applicability of the business records exception in the present case, we apply plenary review to his claim. See *LM Ins. Corp.* v. *Connecticut Dismanteling, LLC*, 172 Conn. App. 622, 631, 161 A.3d 562 (2017).

On appeal, the parties do not dispute that the discharge report contains hearsay. Rather, the defendant's sole basis for claiming that the court improperly admitted the discharge report pursuant to the business records exception to the hearsay rule is that Recchia was not the proper person through whom the exhibit should have been admitted. Specifically, he contends that "the witness has to be able to speak knowingly of the practices that generated the record at issue. Here, [Recchia] was not an employee of the Explore program.

Further, she was not able to speak to the Explore program's recordkeeping practices. All that she could speak to was that she was in regular receipt of reports from the Explore program rather than that she produced such reports." He refers to Recchia's "outsider status" in arguing that she did not "demonstrate any firsthand knowledge of the program's recordkeeping practices." We are not persuaded.

This court addressed circumstances similar to those in the present case in *State* v. *Huckabee*, 54 Conn. App. 758, 738 A.2d 681 (1999). The sole issue on appeal in *Huckabee* was "whether the trial court improperly admitted into evidence an attendance report without which the defendant claim[ed] there was insufficient evidence to find a probation violation." Id., 759. The defendant's probation officer in *Huckabee*, Suzanne Kuziak, had referred the defendant to "Project More, a service provider for the alternative incarceration center program." Id., 760. The Office of Adult Probation makes "referrals to and contracts with the alternative incarceration program and Project More [but] neither entity is part of the [O]ffice of [A]dult [P]robation." Id. Kuziak subsequently "received a report from . . . Project More dated January 10, 1997, that indicated that the defendant had missed twenty-one days by that date and that the alternative incarceration program was seeking to terminate him. Kuziak testified that she is required to keep records of the defendant's attendance at the alternative incarceration program as part of the supervision. After admonishing the defendant about the need to improve his attendance and persuading the alternative incarceration program not to terminate him, Kuziak noted that the defendant's attendance slipped again in February and that he also missed two appointments with her. Kuziak applied for a warrant for the defendant's arrest on February 19, 1997. Upon finding a probation violation by a preponderance of the evidence,

the trial court revoked probation . . . . [On appeal] [t]he defendant claim[ed] that the trial court improperly admitted Project More's attendance report, that the report was hearsay and that, but for the improper admission of this report, there would have been insufficient evidence to support the trial court's finding of a violation." (Footnote omitted.) Id., 760–61.

This court in *Huckabee* rejected the defendant's claim on appeal, stating: "Kuziak testified that the [O]ffice of [A]dult [P]robation contracted with the alternative incarceration program for its services. The program provided regular attendance records, and it was Kuziak's duty to keep those records. Kuziak testified that she had utilized the records regularly to keep track of persons on probation and that she had found them to be reliable. We conclude that the trial court properly admitted the attendance report under the business records exception." Id., 762–63.

Similarly, in the present case, the state presented testimony from Recchia that it was within the normal course of business for the Explore program, as a contracted provider of services, to provide her with regular updates regarding, inter alia, the defendant's attendance and compliance with the program, and that it was her responsibility as the defendant's probation officer to ensure that he was complying with the court's orders. In fact, when the prosecutor asked Recchia about the defendant's discharge report from the Explore program, she explained that she receives such documents electronically for any probationer that is discharged from the program and that such document is prepared in the ordinary course of business, at or near the time when the probationer is discharged.

In light of *Huckabee* and the liberal interpretation we must afford to § 52-180; see *State* v. *Williams*, supra, 202 Conn. App. 364; we conclude that the defendant

has failed to demonstrate that the court's admission of the discharge report under the business records exception to the rule against hearsay was improper. "In Connecticut, our appellate courts do not presume error on the part of the trial court. . . . Rather, the burden rests with the appellant to demonstrate reversible error." (Internal quotation marks omitted.) *State* v. *Papineau*, 182 Conn. App. 756, 771–72, 190 A.3d 913, cert. denied, 330 Conn. 916, 193 A.3d 1212 (2018). As we already have pointed out, the only ground that the defendant asserts on appeal in support of his challenge to admission of the discharge report concerns Recchia and whether she had the requisite knowledge regarding the report to establish its admission as a business record. Although the defendant acknowledges that a witness testifying regarding a business record need not be the preparer of the record or an employee of the business that generated the record, he nonetheless repeatedly refers in his appellate brief to the fact that Recchia is not an employee of the Explore program. "[Our Supreme Court, however] repeatedly has held that [i]t is not necessary . . . that the witness have been the entrant himself or in the employ of the business when the entry was made. . . . It is sufficient for a witness to testify that it was the regular business practice to create a document within a reasonable time after the occurrence of the event." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 202 Conn. App. 364–65. Moreover, § 52-180 (b) clearly states that "[t]he writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded," and that such facts, "including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility." See also Conn. Code Evid. § 8-4 (b).

Therefore, with respect to the question of whether the discharge report should have been admitted as a business record, it is of no consequence that Recchia did not produce the document or work for the Explore program. Her testimony, which the court specifically credited, provided a sufficient basis for the court's admission of the discharge report under the business records exception to the hearsay rule.

Accordingly, because we have concluded that the discharge report was admitted properly under the business records exception to the hearsay rule, the court was not required, under *Shakir*, to balance the defendant's interest in cross-examination against the state's good cause for denying the right to cross-examination prior to admitting the report into evidence. See *State v. Shakir*, supra, 130 Conn. App. 467; see also *State v. Crespo*, supra, 190 Conn. App. 647. The defendant's due process claim, therefore, fails.

II

The defendant also claims that the court abused its discretion in revoking his probation. We disagree.

"The standard of review of the trial court's decision at the sentencing phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with

broad discretion. . . . In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." (Citation omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 130 Conn. App. 645, 649–50, 23 A.3d 826 (2011), aff'd, 320 Conn. 694, 132 A.3d 731 (2016).

In the present case, the court rendered judgments revoking the defendant's separate terms of probation in each case. With respect to the sexual assault case, the court sentenced the defendant to seven of the eight years of incarceration that had been suspended, noting that it was "going to give him some credit . . . [and not] sentence him to the full eight years." As to the larceny case, the court sentenced the defendant to four years and six months of incarceration that had been suspended, to run concurrently with the sentence imposed in the sexual assault case. The court sentenced the defendant to a total effective term of seven years of incarceration.

On appeal, the defendant asserts that the court's decision to revoke his probation was focused on his discharges from the Explore and Connection programs, which he contends were not properly before the court. In other words, he claims that the court revoked his probation "partially, if not primarily, on evidence that should not have been considered [which] rendered the [court's] decision without a solid foundation." In the dispositional phase of the proceeding, however, the court never made a reference to The Connection or any evidence relating to it, let alone make any finding indicating that it was revoking the defendant's probation in the sexual assault case on the basis of his failure to complete the program at The Connection, and as we

already have stated in this opinion, the court did not find the defendant in violation of that condition of his probation in the sexual assault case. In light thereof, and given our conclusion in part I B of this opinion rejecting the defendant's claim regarding the hearsay evidence related to the Explore program, this claim necessarily fails as well.

In the disposition phase, the court determined that the "beneficial aspects of probation were not being served" by the defendant continuing probation, that it had to "consider the well-being of society" and the fourteen year old victim in the underlying sexual assault case, that it was "extremely concerned" that the defendant had contacted the victim in violation of a standing criminal protective order, and that "society will not be well served with [the] defendant continuing on probation." The record demonstrates that the court, in deciding to revoke the defendant's probations in both cases, properly considered the beneficial purposes of probation, namely, the defendant's rehabilitation and the protection of society, and balanced the defendant's interests in liberty and rehabilitation against the need to protect the public. See *State* v. *Rodriguez*, supra, 130 Conn. App. 650. The defendant has not otherwise challenged these findings. On the basis of the record before us and affording every reasonable presumption in favor of the correctness of the court's decision, we cannot conclude that the court abused its discretion in revoking the defendant's probations and sentencing him to a total effective term of seven years of incarceration.

The judgments are affirmed.

In this opinion the other judges concurred.